Michelle K. TOMERA, on behalf of herself and all others similarly situated, Plaintiff-Appellant,

v.

Arthur T. GALT, Jr., et al., Defendants-Appellees.

No. 73–2037.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1974.

Decided Feb. 5, 1975.

William M. Ward, Chicago, Ill., for plaintiff-appellant.

Wayland B. Cedarquist, Mitchell Edelson, Jr., Gary M. Elden and William D. Maddux, Edward J. DeGrange, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and FAIRCHILD and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The plaintiff, Michelle K. Tomera, appeals the dismissal of her complaint brought pursuant to section 10(b) of the Securities Exchange Act of 1934[1] and Securities Exchange Commission Rule 10b–5[2] against the defendants, Arthur T. Galt, Jr., Alfred Rodriquez, D. Wendell Fentress, Joseph Wahrer, Justin Weinshenk, Walter Glass, Newton Turcot, Margaret M. Horsting, Eleanor W. Horsting, William Horsting, Astir Mexicana, S.A., La Nueva Candemena, S.A., and Astir Mexicana, Inc. The defendants carry on silver mining operations in Ocampo, Chihuahua, Mexico. Tomera, an investor in the enterprise, commenced this suit on January 26, 1973, as an independent class action for securities fraud. Her case, however, was immediately consolidated with two other pending actions brought by Clarence Mohr, Max Ries and Harold Cohn, suing individually and as a class, against the same defendants for similar violations. The defendants moved for summary disposition of all three actions and the district court, concluding that the actions were time barred, entered summary judgment in their favor. Tomera alone appeals. We reverse.

I

In September 1967, Arthur T. Galt, Alfred Rodriquez, D. Wendell Fentress, Joseph Wahrer, Justin Weinshenk, Walter Glass, Newton Turcot, and Margaret and Eleanor Horsting agreed to promote a Mexican mining business. As a first step, the group leased silver mine claims in Ocampo, Chihuahua. These leases were held under the name of La Nueva Candemena, S.A. (Candemena), a Mexican corporation the promoters organized for this purpose. The defendants also formed another Mexican corporation, Astir Mexicana, S.A. (Astir, S.A.) and an Illinois corporation, Astir Mexicana, Inc. (Astir, Inc.) to construct a mill, road and other mine facilities. These three corporations were staffed by the following appointments: Alfred Rodriquez as president of Astir, S.A. and Astir, Inc. and as technical director of Candemena, D. Wendell Fentress as vice president and chairman of the board of Astir, S.A., William Horsting as secretary of Astir, S.A. and Astir, Inc., and Arthur Galt as treasurer of Astir, S.A. Rodriquez, Fentress and Horsting constituted the board of directors of Astir, S.A.

The defendants estimated the initial cost for their mining enterprise at slight-

---

1. Section 10(b), 15 U.S.C. § 78j(b), provides:

It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. Rule 10b–5, 17 C.F.R. 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

ly more than one million dollars. Since they were only able to raise $70,000 from among themselves, they obtained a $400,000 loan from the Southern Arizona Bank, and approached several prospective investors for the rest. Among these were James B. Dooley, Dr. Wayne Slaughter, William Nott, Arnold Liebling, Clarence Mohr, Max Ries, Harold Cohn and the appellant Michelle Tomera.

Clarence Mohr was the largest investor contributing $160,000 during 1969. In return, he received 201 shares of Candemena and Astir, S.A. stock and interest bearing notes totalling approximately $70,000. He was also appointed secretary-treasurer and a board member of Astir, S.A. On August 13, 1968, Max Ries and Harold Cohn contributed $55,000 for which they received 98 shares of Astir, S.A. stock and $45,000 worth of interest bearing notes. On September 26, 1969, Michelle Tomera contributed $57,000 for which she received 80 shares of Astir, S.A. and Candemena stock and notes totalling $47,000. None of the securities which the defendants offered the new investors was registered.

In October 1969, Clarence Mohr, then acting secretary-treasurer of Astir, S.A. grew concerned with the health of the Mexican corporations. The validity of the Candemena leases was in doubt, the mine and mill permits were not forthcoming, and the Southern Arizona Bank sought payment of its loan. On a number of occasions Mohr pressed Rodriquez and Fentress for Spanish and English copies of Astir, S.A. and Candemena's charters, leases, contracts and the minutes of their directors' and shareholders' meetings. He also earnestly asked for the record of their financial dealings. Rodriquez and Fentress repeatedly refused his requests.

Mohr countered by filing two suits, one state and one federal. In January 1970, Mohr filed suit in the Circuit Court of Cook County against the defendants named in this suit. He alleged corporate mismanagement. On October 31, 1972, he filed in the district court for the Northern District of Illinois his complaint in two counts for securities fraud. The first count alleged violations of section 10(b) and rule 10b–5. The second alleged violation of section 13 of the Illinois Securities Law of 1953.[3] Several months later Max Ries and Harold Cohn intervened adopting Mohr's complaint. The defendants without answering moved to dismiss both Mohr's and the intervenors' complaints. On January 26, 1973, while these motions were pending, Michelle Tomera filed her complaint which restated substantially Mohr's averments. Her action was consolidated with the actions of Mohr, Cohn and Ries.

The district court dismissed both counts against all the defendants. The victory, however, was not complete for Rodriquez, Weinshenk and William Horsting. As to these defendants, the court allowed the plaintiffs to file an amended complaint realleging more specifically the first count. The court directed that the amended complaint set forth the dates the securities were purchased and the defendants' intent at the time of the sale. As instructed the plaintiffs filed an amended complaint setting forth the sale dates and amplifying their account of defendants' violations of rule 10b–5. Tomera stated that she purchased her stock on September 26, 1969, and received her stock certificates and notes on February 1, 1970. Additionally, she clarified the nature of the joint venture scheme and described the role each of the defendants played in it.

Upon defendants' renewed request for dismissal, the district court granted Fentress' summary judgment against Mohr and dismissed the claims of the other plaintiffs including Tomera. The reasons were twofold: (1) The plaintiffs' first amended complaint did not comply with Rule 9(b) Fed.R.Civ.P. since their fraud claims lacked particularity; and (2) plaintiffs Ries, Cohn, and Tomera's claims were time barred since they were

---

**3.** Ill.Rev.Stat. c. 121½, Sec. 137.13.

filed more than three years after commission of the fraud. These grounds for dismissal are the issues of this appeal.

## II

Tomera's first amended complaint states a sufficient claim for securities fraud. The defendants contend that Tomera did not plead facts of sufficient particularity to state a rule 10b–5 cause of action and so did not comply with rule 9(b), Fed.R.Civ.P. The district court, in full agreement, especially disapproved of plaintiff's failure to allege "legally sufficient intent on the part of the plaintiff." (Decision on Defendants' Motions, Nos. 72 C 2746 and 73 C 234, September 12, 1973).

■ Rule 9(b) governs the pleading of section 10(b) and rule 10b–5 claims. Schaefer v. First National Bank of Lincolnwood, No. 73–2128, 509 F.2d 1287 (7th Cir., 1975); Carroll v. First National Bank, 413 F.2d 353 (7th Cir. 1969); Jackson v. Alexander, 465 F.2d 1389 (10th Cir. 1972). It reads in full:

Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

■ Rule 9 must be read together with rules 8(a)(2), 8(e)(1) and 8(f), Fed.R.Civ.P. Buckley v. Altheimer, 2 F.R.D. 285 (D.C.Ill.1942); C. Wright, Law of Federal Courts 282 (2d ed. 1970). Rule 8 requires that a plaintiff give through his pleadings notice to defendant of the nature of his claims. Cf. Appendix of Forms, Fed.R.Civ.P., Forms 6, 9 and 11. It urges the plaintiff to make known his claims simply and concisely in short, plain statements. With these principles in mind, the purpose of rule 9 becomes clear. Rule 9 lists the actions in which slightly more is needed for notice. In a fraud action, a plaintiff need also state "with particularity" the circumstances constituting the fraud. Tomera has done so.

■ Among the fraudulent schemes constituting a violation of rule 10b–5 is selling securities either by omitting to disclose material facts or by making false statements. Tomera's first amended complaint relates with particularity such a scheme. She states that on September 26, 1969, Alfred Rodriquez, then president of Astir, S.A. and technical director of Candemena, sold her several notes and 80 shares of unregistered stock in the mining companies he promoted. She further alleges defendant informed her that these three companies held valid mine leases in Mexico, were carrying on silver mining operations and processing the ore, and planned to use the funds she invested to further develop the mine property and facilities. In fact none of this vital information was true. These averments describing the bare bones of the fraudulent scheme coupled with Tomera's allegations that defendants used the mails and other instruments of transportation in interstate commerce state a sufficient rule 10b–5 claim.

■ Tomera named besides Rodriquez, other individual defendants who allegedly were joint venturers with him, and three corporate defendants in whose name they all did business. A joint venture agreement which was signed by nearly all defendants and which contained their plan to organize Astir, S.A. and Candemena was attached to the complaint and set out more than enough details of defendant's common purpose and their control over the defendant corporations. Cf. Carroll v. First National Bank, supra.

■ Rule 10b–5 claimants need not plead nor prove scienter. It was error for the district court to require Tomera to plead it. In Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir. 1972), this circuit was faced with the problem of determining the correct limitations period for 10b–5 claims. The choice lay between either Illinois Blue Sky securities fraud, or the state common law fraud, statute of limitations. Congress did not provide a limitations period for 10b–5 claims. Using the resemblance

test, the court found the Blue Sky statute closest because neither it nor rule 10b–5 required proof of scienter. The court said:

> Neither Section 137.12 [the Illinois Blue Sky statute] nor 10b–5 contains the defense that one "did not know and in the exercise of reasonable care could not have known" of the misrepresentation which is contained in Section 12(2) of the federal statute (15 U.S.C. § 77*l*(2)) and at common law. The liability under 10b–5 and Section 137.12 is stricter; their remedies should have a greater deterence against fraud.

*Id.* at 127.

*Cf.* also Dasho v. Susquehanna Corporation, 461 F.2d 11, n. 45 (7th Cir.) Swanson v. American Consumers Industries, Inc., 475 F.2d 516, 525 (7th Cir. 1973) (concurring opinion). *Parrent* relied on Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir. 1970) and the oft cited Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961). Both held without reservation that scienter is not an element of proof on a rule 10b–5 claim. Of course evidence of bad faith may be pleaded for, if established, it would affect the remedy to be applied. *Swanson, supra,* 475 F.2d at 525.

Tomera need not aver defendant's scienter. Her first amended complaint notified defendants of the nature of her claims, a rule 10b–5 securities fraud, and it alleged the details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants. This is enough. More information can be gathered through discovery. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### III

The district court, applying Illinois' three year Blue Sky limitations period concluded erroneously that Tomera's claims were stale. Tomera purchased the unregistered stock September 26, 1969 and filed her original complaint January 26, 1973, allegedly four months too late. The district court believed, and the defendants urge here, that the equitable tolling doctrine does not apply since the plaintiff did not sufficiently allege fraudulent concealment. The district court was in error.

Clearly, the federal doctrine of equitable tolling applies in 10b–5 actions. *Parrent, supra;* Bromberg, Securities Law § 2.5(1) (1973). Inasmuch as section 10(b) does not provide a limitations period, federal courts, as a practice, adopt from the forum state the limitations period of the state law most closely resembling rule 10b–5. Trussell v. United Underwriters, Ltd., 228 F.Supp. 757 (D.Colo. 1964); Charney v. Thomas, 372 F.2d 97 (6th Cir. 1967); *Vanderboom, supra.* This is the full extent of state law influence. Determining the point at which the statutory period commences is a matter governed by federal common law. Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1945); Note, Federal Statutes Without Limitations Provisions, 53 Colum.L.Rev. 68 (1953); Note, Fraudulent Concealment as Tolling the Antitrust Statute of Limitations, 36 Ford.L. Rev. 328 (1967). Thus when federal courts find fraudulent concealment, they will suspend the running of the state limitations period. They have often done so in 10b–5 actions. Schaefer v. First National Bank of Lincolnwood, No. 73–2128, 509 F.2d 1287 (7th Cir. 1975); Hochfelder v. Midwest Stock Exchange, 503 F.2d 364 (7th Cir. 1974); Hochfelder v. Ernst & Ernst, 503 F.2d 1100 (7th Cir. 1974).

Securities fraud claimants properly avail themselves of the equitable tolling doctrine by alleging the defendant's fraudulent concealment. Schaefer v. First National Bank of Lincolnwood, *supra.* Tomera has done just this. Her first amended complaint alleges generally defendants' continuing scheme to defraud Astir and Candemena investors. She states:

> [D]uring the period commencing on or about January 1, 1968 and continuing to the present, the defendants herein engaged in a continuing scheme and

artifice to defraud investors, including plaintiffs, in connection with the purchase, solicitation, offer and sale of the unregistered securities as aforesaid, in further violation of Section 10–b [10(b)] of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission promulgated thereunder. (First amended complaint, para. 8.)

This statement is sufficient to avoid summary disposition on a statute of limitations challenge. Tomera, however, pled further details which once proved at trial would establish defendants' fraudulent concealment and toll the limitations period.

 At least two types of fraudulent behavior toll a statutory period. Bailey v. Glover, 21 Wall. 342, 22 L.Ed. 636 (1875). In the first type, the most common, the fraud goes undiscovered even though the defendant after commission of the wrong does nothing to conceal it and the plaintiff has diligently inquired into its circumstances. The plaintiffs' due diligence is essential here. Morgan v. Koch, 419 F.2d 993 (7th Cir. 1969); Developments in the Law—Statutes of Limitations, 63 Harv.L.Rev. 1177 (1950). In the second type, the fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed. Keithley v. Mutual Life Ins. Co., 271 Ill. 584, 111 N.E. 503 (1916); Miller v. Powers, 119 Ind. 79, 21 N.E. 455 (1888); Stanley v. Stanton, 36 Ind. 445 (1871); Krestich v. Stefanez, 243 Wis. 1, 9 N.W.2d 130 (1943); Dawson, Fraudulent Concealment and Statutes of Limitations, 31 Mich.L.Rev. 875 (1933). This type of fraudulent concealment tolls the limitations period until actual discovery by the plaintiff. The court in Smith v. Blachley, 198 Pa. 173, 47 A. 985 (1901), aptly stated:

> The cases which hold that, where fraud is concealed, or, as sometimes added, conceals itself, the statute runs only from discovery, practically repeals the statute pro tanto. Fraud is always concealed. If it was not no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If the plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars, the statute runs its regular course. But, if the wrongdoer adds to his original fraud affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute until discovery.

*Id.* at 987.

 Tomera's complaint avers this second type of concealment. Briefly, she alleges that the defendants did not keep records of the funds invested in their mining companies nor how these funds were disbursed. They refused to make available even to Mohr, the secretary and treasurer of Astir, S.A., the charters of Astir, S.A. and Candemena, the leases held by Candemena, the Mexican mill and mine permits, any agreements between Astir, S.A. and Candemena, and the minutes of their stockholders' and directors' meetings. They refused to answer any inquiries about the ownership of the mine sites, the mining and processing operations, the companies customers and supplies and the repayment of the Arizona National Bank loan. Whether the plaintiff personally inquired into the business affairs of the two Mexican corporations is unimportant. The defendants' conduct is reason enough to toll the limitations period.

 The fundamental purpose of section 10(b) and rule 10b–5 is to achieve a high standard of business ethics. This purpose is taken seriously and is broadly construed. *Cf* Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1971); SEC v. Capital Gains Research Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). Summarily extinguishing rule 10b–5 claims during pleadings on statute of limitations grounds does not work to this end. Limitations issues ordinarily re-

quire factual determinations and are best left to trial.

Accordingly, we reverse the judgment of dismissal.