Fred. A. W. FRANKE, on his own behalf and on behalf of all other persons similarly situated, Plaintiff,

v.

MIDWESTERN OKLAHOMA DEVELOPMENT AUTHORITY et al., Defendants.

No. CIV–76–172–B.

United States District Court, W. D. Oklahoma.

Oct. 8, 1976.

Roger J. Nichols and Mason H. Rose, Los Angeles, Cal., J. Michael Rediker, Birmingham, Ala., Robert A. Jackson, Oklahoma City, Okl., for plaintiff.

Reford Bond and Reid E. Robison of McAfee, Taft, Mark, Bond, Rucks & Woodruff, A Professional Corp., Oklahoma City, Okl., for defendants Smith, Leaming & Swan, Hal D. Leaming and Roger H. Swan.

## MEMORANDUM OPINION AND ORDER

BOHANON, District Judge.

This matter is before the Court on Motion for Summary Judgment filed on behalf of Smith, Leaming & Swan, a partnership, and its partners, Hal D. Leaming ("Leaming") and Roger H. Swan (these defendants are hereinafter referred to collectively as "Smith, Leaming"). The Court feels prompted to stress that both the law and the manifest requirements of fairness resolve this suit in favor of Smith, Leaming and require the granting of summary judgment in their favor. Considering all of the pleadings and affidavits, and every inference therefrom, in the light most favorable to plaintiff, the Court concludes that there is neither any evidence in support of such claims nor any evidence from which the Court could reasonably infer any wrongdoing on the part of Smith, Leaming.

Rule 8 of the Federal Rules of Civil Procedure requires that a Complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." and such Complaint may be dismissed without leave to amend when it is "so verbose, confused and redundant that its true substance, if any, is well disguised." *Corcoran v. Yorty*, 347 F.2d 222 at 223 (9th Cir. 1965); *National Indian Youth Council v. Morton*, 363 F.Supp. 475 at 479 (W.D.Okl.1973). Especially as to defendants Smith, Leaming, plaintiff's 19-page Complaint is indecisive and unduly vague, and thus susceptible to being dismissed as a matter of law. More importantly, however, the defendants are entitled to summary

judgment based on a careful examination of the merits of plaintiff's claim.

█ The record clearly establishes that Smith, Leaming were retained to serve solely as bond counsel. It was incumbent upon them to advise as to the bond sales legality and to verify the tax exempt status of interest payments accruing to the bondholders. As bond counsel they could not be expected to warrant the over-all economic soundness of the issue; such a fiducial role and responsibility was not attributable to them. Bond counsel standards generally contemplate no such function or ability, and the Smith, Leaming terms of employment, including the amount of their fee, $6,500.00, expressly preclude the possibility that such was the intent of the parties. There is no intimation in this entire record that the legal services contracted for and rendered were in anyway faulty or deficient; and it would be inappropriate for this Court to arbitrarily expand bond counsel liability beyond expressly understood limits and clearly beyond Smith, Leaming's acknowledged and professed area of expertise.

Plaintiffs rely heavily on *SEC v. National Student Marketing Corp.,* 402 F.Supp. 641 (D.D.C.1975), a case clearly distinguishable from the one before this Court. In that case the Court determined that the defendant, a lawyer, backdated documents involving the sale of certain corporate assets and made fraudulent statements with an intent to mislead third parties into believing that the divesting of the assets had resulted in a profit to the corporation, when in fact a substantial loss had been incurred. Emphasizing that the lawyer was guilty of issuing a false and misleading opinion letter that was integral to the perpetration of the alleged fraud, the Court concluded that more than a marginal involvement and limited knowledge on the part of the attorney was involved and denied the defendant's motion for summary judgment. As to defendants Smith, Leaming, no comparable issues or factual questions are raised by a careful and attentive reading of the entire record before the Court.

The plaintiff's action as stated in his Complaint and as further stated by his counsel in argument on this Motion is one for damages allegedly arising from plaintiff's investment in bonds issued on or about July 25, 1973, as part of the Midwestern Oklahoma Development Authority Industrial Revenue Bonds, Chill Can Manufacturing, Inc. Series 1973 ("Chill Can Bonds"). Midwestern Oklahoma Development Authority ("MODA") is a development authority or trust organized under the laws of the State of Oklahoma. According to plaintiff's allegations, the net proceeds of the offering of the Chill Can Bonds were to be utilized by Chill Can Manufacturing, Inc. to manufacture a self-cooling recyclable beverage can at the Clinton-Sherman Industrial Airpark near Clinton, Oklahoma. Plaintiff, asserting various causes of action in his Complaint, denies that any misrepresentations were made to him to induce his purchase of the Chill Can Bonds. Plaintiff alleges rather that certain information set forth in his Complaint was omitted from the information which he received, and that as a result he has been damaged.

Smith, Leaming served as one of three "bond counsel" in connection with the bond issue and prepared a "legality opinion."

Plaintiff alleges that Smith, Leaming and other defendants herein knew of the following factors but concealed them from plaintiff: (1) That MODA had no adequate screening process to determine whether Chill Can Manufacturing, Inc. would earn sufficient revenues to pay bond interest premiums; (2) that MODA's experience with industrial revenue bonds such as Chill Can Bonds ". . . was that most issues ended up in default; " (3) that Chill Can Manufacturing, Inc. would be undercapitalized after receipt of the bond funds and because of such undercapitalization the Chill Can Bonds would likely default; (4) that Chill Can Manufacturing, Inc. would have a high risk of failure because it was a single product company; (5) that no production model of the Chill Can had ever been produced even though patent rights had been held by other defendants since August

19, 1969; (6) that the Chill Can would be manufactured at Clinton-Sherman Airpark which is located in a remote section of Oklahoma which has no skilled or adequate labor force; (7) that the bond proceeds would be used by defendants for their own benefits; (8) that the underwriting discount was excessive and would indicate to the average buyer that the Chill Can Bonds were a highly risky and speculative security; and (9) that the indenture trustee was unfamiliar with and was unskilled in the duties of a trustee bank and would breach its fiduciary duties to the bond holders.

In its Answer, Smith, Leaming has denied all allegations of wrongdoing and further has denied any knowledge of the omissions complained of by plaintiff in his Complaint.

The record in this case includes the following:

1. Two affidavits of Leaming (one of which has attached as an exhibit a copy of the "legality opinion");

2. An affidavit of Roger H. Swan;

3. Affidavits of Roger J. Nichols, J. Michael Rediker and Leonard Siegel (all of whom are counsel for plaintiff) together with attached exhibits;

4. The deposition of Fred A. W. Franke, plaintiff, taken in Oklahoma City, Oklahoma, May 8, 1976, with attached exhibits;

5. The affidavit of Harold W. Scott (another defendant herein) with an attached copy of the offering statement relating to Chill Can Bonds;

6. Statements of counsel made in the August 12, 1976, hearing on the instant Motion for Summary Judgment;

7. Letter of April 27, 1976, from Roger J. Nichols, counsel for plaintiff, acknowledging receipt of the relevant documents of Smith, Leaming sent to counsel for plaintiff by defense counsel.

*Appropriateness of Summary Judgment*

Summary judgment cannot serve as a substitute for the trial of cases and does not require the parties to dispose of litigation by the use of affidavits. *Harman v. Diversified Medical Investments Corporation*, 488 F.2d 111 (10th Cir. 1973). However, the function of Rule 56 of the Federal Rules of Civil Procedure is to test whether there are disputed issues of fact to be tried, and conclusory allegations do not create an issue of fact. *Bumgarner v. Joe Brown Company*, 376 F.2d 749 (10th Cir. 1967). As stated by the United States Supreme Court in *Blue Chip Stamps v. Manor Drugstores*, 421 U.S. 723, 739, 740, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975):

> "There has been widespread recognition that litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general. . .
>
> The first of these concerns is that in the field of federal securities laws governing disclosure of information even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial *so long as he may prevent the suit from being resolved against him by dismissal or summary judgment."* (Emphasis added by this Court)

Therefore, this Court must disregard unsupported allegations, and unless there is a genuine issue as to any material fact in this case, summary judgment is appropriate. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Thompson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 401 F.Supp. 111 (W.D.Okl. 1975).

The affidavits submitted by plaintiff in opposition to Smith, Leaming's Motion for Summary Judgment are most unsatisfactory. The deposition of Mr. Franke reveals no evidence of wrongdoing by Smith, Leaming. No affidavit has been submitted by Mr. Franke himself and the affidavits submitted by three of his lawyers are inconsistent and reveal no evidence of substance on any material issue. The affidavit sub-

mitted by Roger J. Nichols, one of Franke's counsel, attempts to invoke Rule 56(f) by stating that ". . . all evidence relating to the transactions which are the basis of this lawsuit is presently in the possession of the named defendants." This affidavit is defective on its face, because it fails to specify what, if anything, would be revealed by further discovery. This affidavit is directly contradicted by the affidavit of J. Michael Rediker, another counsel for plaintiff, and by Rediker's statements during oral argument on this motion to the effect that substantial discovery of certain other defendants has already taken place in Florida and that thousands of pages of transcripts and tens of thousands of pages of documents have been examined by counsel and that this case was investigated for months prior to the filing of the Complaint. Nichols' affidavit is further negated by the fact that the file of Smith, Leaming has been provided to plaintiff and that the Smith, Leaming partners have been available for whatever statements plaintiff desired to take.

■ One of the purposes of the summary judgment procedure is to conserve judicial resources by avoiding unnecessary trials, *SEC v. National Student Marketing Corp., supra,,* and to render summary judgment here will in effect be a piecemeal adjudication of the case. But if the avoidance of piecemeal adjudication were always a sufficient reason for denial of summary judgment, then a plaintiff could freely join solvent defendants, no matter how innocent, immediately placing each such defendant in the position of having to consider at least a nuisance value settlement as a sane alternative to the substantial expense inevitably involved in weathering out a protracted course of litigation.

### The Section 10(b) and Rule 10b-5 Claims

The alleged adverse facts concerning the Chill Can offering which are enumerated above were not communicated to plaintiff at the time he purchased his bonds. It is not necessary to decide whether these facts were material or whether the disclosure of these facts was necessary in order to make the statements made to plaintiff, in the light of the circumstances under which they were made, not misleading. Neither is it necessary to decide whether there was a device, scheme or artifice to defraud, or an act, practice or course of business which operates or would operate as a fraud or deceit upon the plaintiff. Smith, Leaming do not contend that these elements of a Rule 10b-5 action are missing; rather, they contend that they did not themselves violate the Rule or aid and abet a violation of it.

Smith, Leaming's participation in the Chill Can offering was limited. They were employed by MODA in late June or early July of 1975 to provide an opinion in connection with the offering to the effect that the issuer was legally organized and was an agency of the State of Oklahoma; that the bonds were lawfully authorized and were valid and binding obligations of the issuer; that payment of the bonds was secured by a first lien on, and a pledge and assignment of, certain specified collateral and revenue; that the conditions precedent to issuance had been satisfied; and that interest on the bonds was exempt from federal income taxation.

Preliminary to the closing of the bond sale at Fidelity Bank in Oklahoma City on July 25, 1973, a meeting occurred at the Smith, Leaming offices in which certain of the principals to the transaction reviewed the material points intended to be embodied in the project's prospectus or "official statement," soon thereafter released. Leaming was in and out of the office in which the meeting transpired and knew that a review of the prospectus was being conducted. Leaming possessed neither authority nor responsibility, however, to participate in either the formulation or the review of such official statement.

■ A plaintiff in a Section 10(b) case must plead and prove that the defendant was guilty of conscious fault, which would require that the defendant have actual knowledge of the matters complained of. *Clegg v. Conk,* 507 F.2d 1351 (10th Cir.

1974). The Tenth Circuit holding has recently been acknowledged as a correct view by the United States Supreme Court. *Ernst & Ernst v. Hochfelder, supra.* Under these cases, it is now settled that scienter is an element of a Section 10(b) case. There is no evidence in the record that Smith, Leaming had any knowledge which would permit a finding of the necessary scienter at a trial. Defendant Scott was one of the underwriters and was present at the closing, but his affidavit, though couched in terms hostile to Leaming, fails to implicate him. Accordingly, the Court concludes that the evidence in this case justifies summary judgment for Smith, Leaming based on lack of scienter, as well as other stated reasons.

Plaintiff attempts to persuade that "recklessness" is a substitute for scienter. In the context of an omissions case, reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable, negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it. *See Beecher v. Able,* CCH Fed.Sec.L.Rep. para. 95,303 (S.D.N.Y.1975); Prosser, Law of Torts, 185–186 (4th ed. 1971); *Ernst & Ernst v. Hochfelder, supra,* 425 U.S. 185, at 190, 96 S.Ct. 1375, at 1380, 47 L.Ed.2d 668 at 675, fn. 5. If indeed there is any validity to the proposition that obviousness of risk of harm can be a substitute for guilty knowledge, it is sufficient to note that there is no evidence here of such a state of facts. Leaming had no involvement in the construction of the official statement and no responsibility for its contents.

Plaintiff read the Smith, Leaming opinion and "relied" on it. However, that opinion (which is part of the record) does not contain any untrue statements of material fact or omit statements necessary in order to make the statements made not misleading. Plaintiff must have "relied" on the conclusions of law stated in that opinion which were found to be correct. Any fur-

ther reliance on his part would be unjustified as the opinion did not purport to cover anything more than the legal points set out above. Plaintiff contends that the opinion as to validity was incorrect because the bonds were not worth face value. It is obvious from the face of the legal opinion that Smith, Leaming were not rendering an opinion on value.

### *Aiding and Abetting*

Neither is there any issue of fact in this case as to whether Smith, Leaming aided and abetted a violation of Rule 10b–5. Under Section 10(b) and Rule 10b–5 knowing assistance or participation in a fraudulent scheme, or "aiding and abetting," gives rise to liability equal to that of the perpetrators themselves, *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731, 740 (10th Cir. 1974). Aiding and abetting is a concept of the criminal law and the Court sees no reason why its requirements should be relaxed in a civil case.

> "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. U. S.,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, 925 (1949), quoting *U. S. v. Peoni,* 100 F.2d 401, 402 (2nd Cir. 1949) (L. Hand, J.)

In any event, aiding and abetting requires scienter. *Ernst & Ernst v. Hochfelder, supra;* *SEC v. Coffey,* 493 F.2d 1304 (6th Cir. 1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837; *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975); *see Zabriskie v. Lewis,* 507 F.2d 546, 554 (10th Cir. 1974); Restatement of the Law, Torts, Section 876. Again, there is no evidence of scienter on the part of Smith, Leaming.

Plaintiff mistakenly relies upon *Kerbs v. Fall River Industries, Inc., supra,* but that case clearly states that *knowing* assistance is required to establish liability. Of course, any holding that mere silence in the ab-

sence of scienter could constitute a violation of Rule 10b–5 would conflict with the Supreme Court's decision in *Ernst & Ernst.*

## Pendent Jurisdiction

■ Because all of plaintiff's claims against Smith, Leaming arise out of a common nucleus of operative fact, jurisdiction of the state law claims is controlled by the doctrine of pendent jurisdiction, even though no relief is granted upon the Federal claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

"[P]endent jurisdiction is a doctrine of discretion . . .. Its justification lies in considerations of judicial economy, convenience and fairness to litigants. . . ." 383 U.S. at 726, 86 S.Ct. at 1139.

The record is clear as to the facts necessary to decide the pendent claims, and it therefore seems best for the Court to keep jurisdiction of the state law claims, rather than refer them to a state court for duplicate litigation.

## Common Law Fraud and Willful and Wanton Misconduct

■ For conduct to be willful, there must be knowledge on the part of the defendant and such is lacking here. Likewise, common law fraud in Oklahoma requires scienter. *Knudson v. Weeks,* 394 F.Supp. 963 (W.D.Okl.1975). I further note that, if there is any claim stated for willful and wanton misconduct which is different from the claim stated for common law fraud, it would be barred by the Oklahoma statute of limitations, as are all other claims based upon alleged negligence. Title 12, Okla. Stat.1971, Section 95.

## Negligence

■ Evidence of any negligence on the part of Smith, Leaming is also altogether lacking. Even assuming the truth of the unsupported allegations of plaintiff, there is no evidence that Smith, Leaming as bond counsel had any duty to audit or investigate the bond offering, nor does plaintiff cite any case which would suggest the existence of any such duty. In *SEC v. National Student Marketing, supra,* the attorney against whom the injunction is sought (the case has not been resolved on the merits) was denied summary judgment, not because he had a duty to "investigate the integrity of the underwriters" as asserted by the instant plaintiff in his brief, but because he had actual knowledge of the wrongdoing.

■ Further, it is well established in Oklahoma and in most other jurisdictions that as a matter of law an attorney cannot be held liable to a third party with whom he was not in privity by reason of negligence while representing his client. *Waugh v. Dibbens,* 61 Okl. 221, 160 P. 589 (1916); *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931); *Stephens Industries, Inc. v. Haskins & Sells,* 438 F.2d 357 (10th Cir. 1971); *Koch Industries v. Vosko,* 494 F.2d 713 (10th Cir. 1974).

Finally, any claim for negligence is barred in any event by the Oklahoma statute of limitations. Title 12 Okla.Stat.1971 Section 95.

## Blue Sky Law

■ The claim asserted by plaintiff for violation of the Oklahoma Securities Act (71 Okla.Stat.1971, Section 408) is barred on its face by the limitation contained in Section 408(e), plaintiff having purchased his securities on August 14, 1973, and having brought this action more than two years thereafter. The facts also show that Smith, Leaming as a matter of law did not materially participate or aid in the sale of the bonds to the instant plaintiff. This plaintiff never met Leaming; he paid for his Chill Can Bonds before he received any information about them; and he received the bonds before he read Smith, Leaming's opinion. The requirement of material participation on the part of these defendants, 71 Okla.Stat.1971, Section 408(b), is lacking.

There remaining no issues for trial, the Motion for Summary Judgment of defendants Smith, Leaming & Swan, a partnership, and its partners, Hal D. Leaming and

Roger H. Swan, should be sustained and the case as to these defendants dismissed, and

IT IS SO ORDERED.