Clifford A. CARTER and Herbert J. Brough, individually and on behalf of a class, Plaintiffs,

v.

SIGNODE INDUSTRIES, INC., a Delaware corporation; Signode Corporation, Inc., a Delaware corporation; Signode Employees' Savings Profit Sharing Plan; Stifel Nicolaus & Co., a Missouri corporation; J. Thomas Schanck, Roger H. Cushman, William W. Tongue, Richard M. Burridge, H. Robert Powell, and Robert T. Callahan, Defendants.

No. 87 C 9939.

United States District Court, N.D. Illinois, E.D.

Aug. 18, 1988.

Charles Pressman, Joel M. Hellman, Bertrand A. Rice, Charles Pressman, P.C., Chicago, Ill., for plaintiffs.

John J. Cassidy, Jr., Candace Pauis, Thomas O'Brien, Vedder Price, Kaufman & Kammholz, James A. Christman, Wildman Harrold Allen & Dixon, Chicago, Ill., Thomas E. Douglass, Ellen E. Bonacorsi, Coburn Croft & Putzell, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Clifford Carter and Herbert Brough filed this four-count class action against the defendants charging in three counts violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and in one count violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and SEC Rule 10b–5. Defendants moved to dismiss the second amended complaint. In a June 27, 1988 order, we denied the motion to dismiss the ERISA counts. The parties then conditionally stipulated to a class consisting of, at most, all Signode employees who retired between January 1 and August 8, 1986, and purchased guaranteed income contracts ("GICs") with their distributions from the Signode Employees' Savings Profit Sharing Plan ("Plan"). Presently before the Court is the motion to dismiss the securities fraud claim, Count III, which, for the reasons given below, we deny.

### Factual Background [1]

Plaintiffs, former employees of the closely-held corporation Signode Industries, Inc. (referred to hereafter, together with its successor Signode Corporation, as "Signode"), seek for themselves and other class members to recover damages from Schanck, Signode and the Plan for alleged violations of Section 10(b) of the Securities Exchange Act and SEC Rule 10b–5.

Brough and Carter were long-time Signode employees and Plan participants. During a Plan participant's term of employment at Signode, the Plan receives employee and employer contributions and combines them in a general investment fund. The Plan trust provides that, upon termination of employment, a participant is entitled to receive a distribution of money from the general investment fund in the form of a lump sum payment, the purchase of an annuity, continued participation in the general investment fund or the purchase of an interest in a GIC. Plan assets must be valued within thirty days of termination. At all times relevant to this action, the Plan held assets worth approximately $150,000,000.00, a substantial portion of which consisted of 1,050,000 shares of Signode common stock.

On August 8, 1986, Signode Industries merged with Illinois Tool Works ("ITW") in a transaction through which ITW purchased the common stock of Signode Industries at $28.726 per share. This merger produced Signode Corporation, the surviving firm. The events leading up to the merger are significant. Signode management had begun to consider restructuring the firm at least as early as the end of 1985. On or about January 27, 1986, the Signode Board of Directors (chaired by de-

---

**1.** Plaintiffs allege the following facts pertinent to their securities claim which, along with all reasonable inferences therefrom, we take as true for purposes of this motion to dismiss.

*Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

fendant Schanck) formed a planning committee to explore reorganization possibilities. In May of 1986, Signode Industries hired Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") as financial advisor, and Merrill Lynch valued the Signode common at between $18 and $27 per share in a report to Signode management dated May 23, 1986.

On or by June 6, 1986, Signode management indicated to the planning committee that it was considering buying up Signode common for $25 a share. On July 8, 1986, Merrill Lynch revised its estimates of share value to reflect that figure as a minimum. Defendants never advised plaintiffs or any other members of the putative class of the restructuring plans or of the stock valuations.

Despite the sale of Signode common for $28.726 per share on August 8, 1986, the Plan valued the stock at between $3.50 and $6.50 a share for purposes of Plan distributions between January 1 and August 8 of 1986. These figures were provided by Stifel Nicolaus & Co. ("Stifel Nicolaus") as a result of a series of appraisals of the stock during the first half of 1986.

Brough retired from Signode on or about May 2, 1986, and Carter retired on or about June 2, 1986. The Plan determined their interests in June and July of 1986 on the basis of a $5.81 per share value for Signode common. Immediately following these determinations, the Plan made distributions from plaintiffs' accounts in the general investment fund, and plaintiffs opted to purchase interests in GICs.

In Count III, plaintiffs allege that their decision to invest Plan distributions in the GICs constituted a purchase of securities within the meaning of Section 3 of the Securities Exchange Act, 15 U.S.C. § 78c(a)(10), and that by their failure to inform plaintiffs of the true market value of Signode common held by the Plan, of management's plans to sell the company and of the various discussions and estimates concerning possible restructuring of Signode preceding the merger with ITW, the defendants omitted to state material facts necessary to make their statements not misleading in light of the circumstances in which they were made and thereby induced the plaintiffs to purchase interests in GICs prior to the sale of Signode common to ITW and at a price twenty percent higher than they would have paid had defendants disclosed all material facts.

Defendants challenge the sufficiency of the securities fraud claim on three grounds: that plaintiffs have no standing to sue for a Rule 10b–5 violation, that scienter has not been properly pled and that plaintiffs have failed to allege fraud with particularity as required by Fed.R.Civ. P. 9(b). We find that none of these contentions provide a basis for dismissal.

Standing to Sue Under Rule 10b–5

Defendants posit two grounds for challenging plaintiffs' standing to sue: (1) the alleged omissions and misstatements concerned general investment fund accounts which are not securities; and (2) the securities fraud claim is predicated on a decision not to reinvest in or "purchase" an interest in the Plan general investment fund.

In *Beck v. Cantor, Fitzgerald & Co*, 621 F.Supp. 1547, 1553 n. 5 (N.D.Ill.1985), the elements of a 10b–5 claim are summarized:

To state a claim under Section 10(b) or Rule 10b–5, the plaintiff must allege the following elements: 1) that the conduct complained about occurred in connection with the purchase or sale of securities; 2) that the defendants misrepresented or omitted to state material facts; 3) that plaintiff reasonably and justifiably relied, to his detriment, upon the misrepresentations or omissions; and 4) that defendants acted with scienter. (Citations omitted).

For plaintiffs' claim to be tenable, at least one of the financial interests present in the suspect transactions must be a security—either the GICs or the general investment fund account. Plaintiffs do not contend that the fund accounts are securities; rather, they argue that the GICs are securities, and, because the general investment fund interests were the consideration given to the Plan in exchange for the GICs, the material omissions and misstatements concerning Signode stock are "in connec-

tion with the purchase or sale" of a security.

We assume on the basis of plaintiffs' allegations that the GICs are securities, and defendants have not contended otherwise.[2] We therefore need not consider further whether the fund accounts are securities.[3] We must still address, however, whether the transaction here constitutes a purchase or sale.

Defendants cite to the landmark decision of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), for the proposition that a plaintiff in a 10b–5 action must be a true purchaser or buyer of securities, and that individuals who are merely potential purchasers but do not decide to buy lack standing to sue. Defendants contend that plaintiffs fall into the latter category. Defendants have misapplied the dictates of *Blue Chip Stamps* to the transactions alleged in the complaint. Under *Blue Chip Stamps*, the inquiry focuses on whether the exchange of the general investment fund accounts for the GICs constitutes a purchase or sale of a security and whether any omission or misstatement concerning the fund accounts was "in connection with" that purchase or sale.

The transaction between plaintiffs and the Plan constituted a purchase or sale under the Securities Exchange Act of 1934. The language of the statute is very broad. "The terms 'buy' and 'purchase' each include any contract to buy, purchase or otherwise acquire." Section 3(a)(13), 15 U.S.C. § 78c(a)(13). The Act also provides that "the terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of." Section 3(a)(14), 15 U.S.C. § 78c(a)(14). The Exchange Act's definition of a sale appears more liberal than that of the 1933 Act; unlike Section 2(3) of the 1933 Act, the words "for value" are not found in the Exchange Act's definition, and some courts have held that consideration is not even necessary for a 1934 Act purchase or sale. *See Rathborne v. Rathborne*, 683 F.2d 914, 920 (5th Cir.1982); *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 281 (2d Cir.1975).

The plaintiffs have clearly provided something of appraisable value in exchange for the GICs. Plaintiffs obtained the GICs by relinquishing their general investment fund accounts which, even if not securities under the 1933 and 1934 Acts, clearly were items with recognized financial value and

**2.** Defendants expressly reserved the right to challenge the status of GICs later in this litigation.

**3.** We have found no opinion which squarely considers whether employee interests in the type of pension plan here are securities. In 1979, the Supreme Court held that the Securities Acts do not apply to a noncontributory and compulsory pension plan. *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 570, 99 S.Ct. 790, 802, 58 L.Ed.2d 808 (1979). The Signode Plan is funded with voluntary contributions from employees. Courts and commentators have distinguished "defined benefit" plans from "defined contribution" plans. "Defined benefit" means the employees retirement benefits are fixed, and the employer's contribution to the plan is adjusted as needed to deliver these benefits; "defined contribution" means pension benefits are based on contributions together with losses, gains, income and expenses resulting from securities in which contributions are invested. Fitz–Gibbon, *What is a Security?*, 64 Minn.L.Rev. 893, 945 n. 184 (1980). The SEC has taken the position in two separate releases that "the interests of employees in voluntary, contributory, corporate pension and profit-shar-

ing plans are securities within the meaning of ... the 1933 Act." Securities Act Release No. 33–6188, 45 Fed.Reg. 8960, 8966 (Feb. 11, 1980). *See also* Securities Act Release No. 33–6281, 46 Fed.Reg. 8446, 8447 (Jan. 27, 1981). However, in *Black v. Payne*, 591 F.2d 83 (9th Cir.), *cert. denied*, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979), the court found that interests in a compulsory, but contributory pension plan did not constitute investment contracts (and therefore securities) because benefits were not keyed to the profits of a common enterprise. *Id.* at 87. More significantly, the Seventh Circuit, following *Daniel*, found a particular voluntary contributory pension plan interest was not a security. *Coward v. Colgate–Polmolive Co.*, 686 F.2d 1230, 1236 (7th Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983). *See also Tanuggi v. Grolier, Inc.*, 471 F.Supp. 1209 (S.D. N.Y.1979). The foregoing authorities indicate that a decision on the status of investment fund interests as securities would necessitate a careful factual inquiry. Had plaintiffs pled generally that their Plan accounts were investment contracts, we could not at this time have determined without further details whether they were as a matter of law. *See Fulk v. Bagley*, 88 F.R.D. 153, 164 (M.D.N.C.1980).

therefore consideration for the GICs. Further, each member of the plaintiff class made a significant investment decision—i.e., whether to receive the value of his account in a lump sum, purchase an annuity, continue to participate in the general investment fund or purchase a GIC. Numerous courts have utilized precisely that factor in deciding whether a transaction is a purchase or sale under Section 10(b). In *Keys v. Wolfe*, 709 F.2d 413, 416–17 (5th Cir.1983), the Fifth Circuit stated:

> The test for determining whether a particular transaction meets the "in connection with a purchase or sale" requirement of Section 10(b) and rule 10b–5 was set forth by this court in *Rathborne v. Rathborne*, 683 F.2d 914 (5th Cir.1982): "[W]e must ask whether the transaction has wrought a fundamental change in the nature of plaintiff's investment...."

Similarly, the Oregon district court stated that "[i]n general, a 'purchase' has occurred when the plaintiff has taken action representing a new decision to invest." *Ahern v. Gaussoin*, 611 F.Supp. 1465, 1478 (D.C.Or.1985). *See also Freschi v. Grand Coal Venture*, 551 F.Supp. 1220 (S.D.N.Y. 1982). Also, an exchange is a "purchase" when it places an investor's money at additional risk. *Ingenito v. Bermec Corp.*, 441 F.Supp. 525 (S.D.N.Y.1977). For all these reasons, we conclude that the transactions were purchases of securities under the Securities Act.

■ We further find that the alleged omissions and misstatements of fact concerning the fund accounts were in connection with the security purchase. In the paradigm § 10(b) and Rule 10b–5 situation, the "in connection with" requirement is satisfied by allegations of fraud as to the value of the security itself. The courts have not, however, read the federal securities laws so rigidly as to preclude a finding of liability in cases in which the fraud was not as to the value of the security, but rather, involved other information material to the purchaser's or seller's decision to engage in the securities transaction. In *Abrams v. Oppenheimer Government Securities, Inc.*, 737 F.2d 582, 593 (7th Cir. 1984), the Seventh Circuit stated generally:

Closely related to the purchase and sale requirement of the security antifraud provisions is the "In connection with" requirement, i.e. Section 10(b) of the 1934 Act and Rule 10b–5 proscribe fraud "in connection with the purchase or sale of any security." In *Superintendent of Insurance v. Bankers Life & Casualty Co.*, the Supreme Court held that this phrase "must be read flexibly, not technically and restrictively." Subsequent decisions have similarly held that the "in connection with" requirement amounts to some nexus but not necessarily a direct and close relationship. (Citations omitted).

*See also* 2 Bromberg & Lowenfels, *Securities Fraud & Commodities Fraud*, § 4.7(574)(3) at 88.34 (1982) (suggesting that the connection between the fraud and the securities transaction "can be very tenuous").

Thus, courts have uniformly held that liability under the Securities Exchange Act can attach to omissions and misstatements as to the value of the consideration used to purchase a security even if the security itself was properly valued. The Supreme Court implicitly established this principle in *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) ("*Bankers Life*"). There, defendants essentially conspired to purchase plaintiff's stock by fraudulently inducing the plaintiff to sell its United States Treasury bonds, the security, at full market price and through various financial sleights of hand used the proceeds of the bond sale as their own to purchase the stock. The fraud was in the consideration, in that the plaintiff was deprived of any compensation for its bonds, and the Court assumed without discussing in any detail that the fraud was in connection with the sale of a security even though the bonds were apparently properly valued.

Relying primarily on *Bankers Life*, the Seventh Circuit held in *Eason v. General Motors Acceptance Corp.*, 490 F.2d 654 (7th Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974), that allegations of fraud as to the value of the

consideration rather than as to the value of the stocks purchased were not fatal to the complaint. In that case, the plaintiffs were shareholders of a corporation that purchased a car leasing business from the defendants in exchange for 7,000 shares of corporate stock. Subsequent to completion of the transaction, the leasing business failed. Plaintiffs brought suit under § 10(b) and Rule 10b–5, alleging that defendants made material omissions and misstatements of fact as to the financial condition of the leasing business. The Seventh Circuit held that the plaintiff-shareholders had standing to sue even though they were not the actual sellers of the securities,[4] and that the alleged fraud was "in connection with" the securities transaction:

> It is also settled that . . . even though the alleged fraud related to the value of assets acquired, rather than the value of the security delivered, the deception was "in connection with" the sale of a security. *Id.* at 656.

More recently, in *S.E.C. v. Drysdale Securities Corp.*, 785 F.2d 38 (2d Cir.), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986), the Second Circuit considered a Rule 10b–5 action arising out of a complicated transaction in which the defendant essentially sold securities subject to an agreement to repurchase them later and purchased securities subject to an agreement to resell them later. In each situation, defendant's ability to honor the agreements hinged on its and a related corporate entity's ability to provide adequate consideration for a future securities purchase. The plaintiff alleged fraudulent statements as to the financial health of both corporate entities and the Second Circuit concluded that this constituted fraud as to the consideration to be provided and was therefore in connection with a securities transaction, despite the absence of misstatements or omissions going to the value of the actual securities traded. *See also*

*Lino v. City Investing Co.*, 487 F.2d 689, 694 (3d Cir.1973) ("[T]he 1934 Act may be violated when the fraud involves the thing given rather than the security received"); *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 201 (5th Cir.1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961).

Our situation here differs subtly, but we believe insignificantly from these cases in which the defendant allegedly made misstatements and omissions of fact as to the consideration that it was providing (or was to provide) in exchange for a security. Here, the plaintiffs allege that certain defendants fraudulently valued the consideration that the plaintiffs used to purchase a security (the GICs) from the defendants. Section 10(b) of the Securities Exchange Act and Rule 10b–5 were designed to protect persons who are deceived in a securities transaction by a party to that transaction who enjoys control over material information and abuses that position to gain advantage in the transaction. We view the appraisal of the general investment fund accounts and the exchange of those accounts for the GICs as components of a single transaction. Defendants here had complete control over the appraisal of the value of the consideration that plaintiffs provided to purchase securities from the defendants.

■ Defendants contend that a finding that fraud as to the value of the fund accounts is in connection with the purchase of the GICs constitutes an unwarranted expansion of the reach of the securities laws. Specifically, defendants portray such a finding as providing any individual who purchases a security with a securities claim in the event that the consideration given was initially undervalued. Our decision here portends no wholesale expansion of securities fraud liability. In concluding

---

4. The Seventh Circuit's holding as to the plaintiff's status as purchasers and sellers was overturned in *Blue Chip Stamps.* Defendants mistakenly view *Blue Chip Stamps* as rendering *Bankers Life* unimportant or incorrect. *Blue Chip Stamps* limited the permissible plaintiff classes to actual purchasers and sellers of securities and in no way rejected or weakened the implicit holding of *Bankers Life* and its progeny that fraud concerning the consideration for a security rather than the security itself constitutes fraud in connection with a securities transaction and is therefore actionable under Rule 10b–5.

that plaintiffs have stated a claim, we hold only that liability under § 10(b) and Rule 10b–5 attaches to a securities transaction in which the seller of the security fraudulently values the consideration that a plaintiff uses to purchase that security. The situation here is particularly suited to such a holding, because defendants were in sole control of material information bearing upon the value of the consideration and directly managed the appraisal of that consideration for all purposes.

We do not suggest that liability attaches to the seller if a party uninvolved in the securities transaction fraudulently values the purchaser's consideration. Indeed, our holding falls within the guidelines articulated by the Supreme Court. In *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Court declared that claims of fraud and fiduciary breach constitute "a cause of action under any part of Rule 10b–5 only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Id.* at 473–74, 97 S.Ct. at 1301. The Court went on to state that "the Court repeatedly has described the 'fundamental purpose' of the Act as implementing a 'philosophy of full and fair disclosure'; once full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute." *Id.* at 477–78, 97 S.Ct. at 1303. The Court recently reiterated this point in *Basic, Inc. v. Levinson,* —— U.S. ——, 108 S.Ct. 978, 984, 99 L.Ed.2d 194 (1988): "Disclosure, and not paternalistic withholding of accurate information, is the policy chosen and expressed by Congress. We have recognized time and again, a 'fundamental purpose' of the various securities acts, 'was to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.'" In view of these guidelines, we believe that our carefully drawn holding does not improperly extend the reach of Rule 10b–5, given defendants' failure to disclose material information concerning the value of the consideration, of which the crucial component was the value of private-

ly held common stock in the defendant corporation. In this context, we believe that plaintiffs have alleged a cause of action within the ambit of the federal securities antifraud laws and accordingly deny the motion to dismiss on these grounds.

### Scienter

■ Defendants contend that plaintiffs have failed to allege scienter, that is, that defendants acted with "... a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). We conclude that plaintiffs have satisfactorily pled scienter.

In *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977), the Seventh Circuit explored whether reckless behavior can constitute scienter, a question specifically left open by the Supreme Court. *See Ernst & Ernst,* 425 U.S. at 194 n. 12, 96 S.Ct. at 1381 n. 12. The Seventh Circuit held "that a reckless omission of material facts upon which the plaintiff put justifiable reliance in connection with a sale or purchase of securities is actionable under Section 10(b) as fleshed out by Rule 10b–5," 553 F.2d at 1044, and defined reckless omissions:

reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it. *Id.* at 1045, *quoting Franke v. Midwestern Oklahoma Development Authority,* 428 F.Supp. 719 (W.D.Okl.1976).

The Court was careful to define the boundaries of scienter after incorporating reckless conduct. "Under this definition, the danger of misleading buyers must be actually known or so obvious that any reasonable man would be legally bound as knowing, and the omission must derive from some thing more egregious than even 'white heart/empty head' good faith." *Id.*

Plaintiffs allege in ¶ 41 of the Second Amended Complaint that "[t]he foregoing material facts [as to Signode stock's true value and management's plans] were known to defendants Schanck, Signode and the Plan ... and each knew that the statements made to plaintiffs about prospective purchases of an interest in a GIC were misleading without disclosure of the material facts." This allegation falls squarely within the definition of reckless conduct as set forth in *Sundstrand,* and the motion to dismiss on this ground is accordingly denied.

### Particularity Under Rule 9(b)

■ Defendants contend that the complaint is defective for failure to allege fraud with particularity under Fed.R.Civ.P. 9(b).[5] In *Donato v. Merrill Lynch, Pierce, Fenner & Smith,* 663 F.Supp. 669 (N.D.Ill. 1987), we considered the requirements of Rule 9(b) in the context of securities fraud allegations. Rule 9(b) must be applied in conjunction with the Rule 8(a) requirement of a short and plain statement of the cause of action. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975); *Donato,* 663 F.Supp. at 673. In a securities fraud case, plaintiffs need only describe the outline of the fraudulent scheme and need not set forth facts which, because discovery has not been completed, are in the exclusive possession of defendants. *Morgan v. Kobrin Securities,* 649 F.Supp. 1023, 1028 (N.D.Ill.1986); *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985). The Seventh Circuit has liberally construed Rule 9(b), stating in *Tomera* that plaintiff need only allege a "brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." 511 F.2d at 509. *See also Darling & Co. v. Klouman,* 87 F.R.D. 756, 757–58 (N.D.Ill. 1980). Plaintiffs need not allege the evidentiary details that will be used to support a fraud claim later in the litigation. *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1311 (N.D.Ill.1984). When the multiple defendants include corporate insiders,

as in this case, "[n]umerous courts have held that the conduct of such individuals need not be specified and the fraudulent act complained of need not be attributed to certain persons if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations." *Banowitz,* 600 F.Supp. at 1469. *See also Swanson v. Wabash, Inc.,* 577 F.Supp. 1308 (N.D.Ill. 1983).

As evidenced by the first section of the opinion, plaintiffs have alleged the operation of the fraudulent scheme and put the defendants on sufficient notice of the claim. Accordingly, the motion to dismiss on this ground is denied.

### Conclusion

The plaintiffs have satisfactorily pled a cause of action under Section 10(b) of the Securities Exchange Act and Rule 10b–5. The motion to dismiss is denied. It is so ordered.

---

5. Rule 9. Pleading Special Matters

\* \* \* \* \* \*

(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.