**Elizabeth K. McCLOSKEY**

v.

**Thomas D. McCLOSKEY and McCloskey & Company, Inc.**

**Civ. A. No. 75–3014.**

United States District Court,
E. D. Pennsylvania.

May 1, 1978.

---

Norman Perlberger, Philadelphia, Pa., for plaintiff.

Steven B. King, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FOGEL, District Judge.

This case presents the following two issues of first impression with respect to the "purchase or sale" standing requirement of Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b)[1] and Rule 10b–5[2] promulgated thereunder:

1) *Is an exchange of shares for voting trust certificates a "purchase or sale"?*

2) *Is a shareholder agreement granting a corporation the right of first refusal a "purchase or sale"?*[3]

Our answer to the first question is *no* and to the second question is *yes*; accordingly,

[1] 15 U.S.C. § 78j(b) (1970) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

[2] 17 C.F.R. § 240.10b–5 (1976) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

[3] Although this issue was presented in *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir. 1976), the court held that plaintiff was not a party to the right of first refusal and, therefore, did not decide it.

defendants' motion to dismiss, or in the alternative, for summary judgment is denied. Our reasons follow:

## I. STATEMENT OF THE FACTS:

Plaintiff, Elizabeth McCloskey, is a citizen of Pennsylvania, and former wife of defendant Thomas McCloskey. Prior to August 10, 1965, plaintiff owned 1,386 shares of common stock of McCloskey & Company, a Delaware corporation. On August 10, 1965, the shareholders of McCloskey & Company approved a merger between that corporation and defendant McCloskey & Company, Inc., under which defendant McCloskey & Company, Inc. became the surviving corporation. Pursuant to the merger, and a shareholder's agreement executed on August 10, 1965, certain shareholders of McCloskey & Company, including plaintiff and defendant Thomas McCloskey, exchanged their shares of common stock in McCloskey & Company for an equal number of shares in the surviving corporation, defendant McCloskey & Company, Inc. The remaining shareholders of McCloskey & Company sold their shares of common stock to defendant McCloskey & Company, Inc. for cash and notes payable over a period of ten years.

Under the terms of the shareholder agreement of August 10, 1965, all shareholders of defendant McCloskey & Company, Inc. were required to execute a voting trust agreement effective for ten years (until August 10, 1975), unless terminated earlier by reason of satisfaction of the notes held by the selling shareholders of McCloskey & Company. On August 10, 1965, all shareholders of defendant McCloskey & Company, Inc. executed the voting trust agreement, pursuant to which they exchanged their common stock for voting trust certificates that reflected the number of shares held in trust. The voting trust agreement provided that Matthew McCloskey and defendant Thomas McCloskey would act as voting trustees. On October 10, 1972, Matthew McCloskey resigned as a voting trustee, leaving defendant Thomas McCloskey as the sole voting trustee.

On April 7, 1973, a special meeting of the shareholders of defendant McCloskey & Company, Inc. was held which plaintiff did not attend; its purposes, as stated in the Waiver of Notice, were: (1) to amend the by-laws to increase the number of directors; and (2) to elect five directors. Defendant Thomas McCloskey presided at the meeting and announced that on March 15, 1973, the voting trust created pursuant to the voting trust agreement of August 10, 1965, had terminated. Accordingly, the shares of common stock in defendant McCloskey & Company, Inc. were distributed to all holders of the voting trust certificates, with the exception of plaintiff and defendant Thomas McCloskey. Stock was not distributed to plaintiff and defendant Thomas McCloskey because they had allegedly executed a second voting trust agreement on March 16, 1973; under that agreement the shares of stock to which plaintiff and defendant Thomas McCloskey would have otherwise been entitled, were exchanged for voting trust certificates in a second voting trust. Under this voting trust, which included a majority of the outstanding shares of defendant McCloskey & Company, Inc., defendant Thomas McCloskey was designated as sole voting trustee; it was effective for ten years (until March 16, 1983), unless terminated earlier by the death of the voting trustee.

At an April 7, 1973, special meeting of stockholders, defendant Thomas McCloskey proposed a stockholder's agreement for adoption. Under the proposed agreement, defendant corporation acquired the right of first refusal with respect to: (1) all stock currently outstanding; and (2) any subsequently issued stock. If the corporation elected not to exercise its option, the other shareholders were granted the right to buy the stock. This agreement was signed by each shareholder in attendance at the meeting. Defendant Thomas McCloskey signed the agreement, purportedly on behalf of plaintiff while acting in his capacity as voting trustee under the terms of the March 16, 1973, voting trust agreement.

In her amended complaint, plaintiff alleges that she relied upon material misrepresentations and omissions made by defendant Thomas McCloskey, without knowledge of their falsity; she avers that she was induced to sign the voting trust agreement of March 16, 1973, on the basis of these deliberate fraudulent maneuverings, and further claims that but for such fraudulent misrepresentations and omissions, she would not have signed the voting trust agreement. Plaintiff asserts claims arising under the Securities Exchange Act of 1934 and Rule 10b–5 promulgated by the S.E.C. pursuant thereto, as well as pendent state claims based on the Pennsylvania Securities Act of 1972, 70 P.S. § 1–401, and Pennsylvania common law relating to fraud and the partition of property.

## II. STATEMENT OF THE LEGAL ISSUES:

### A. THE VOTING TRUST ISSUE:

■ Defendants have moved for dismissal (F.R.Civ.P. 12(b)(6)) or, in the alternative, for summary judgment (F.R.Civ.P. 56) with respect to. Count I of the amended complaint. In support of their motion, *they argue that plaintiff was neither a "purchaser" nor "seller" within the meaning of Section 10(b) and Rule 10b–5, and, hence, lacks standing to sue.* Plaintiff, on the other hand, claims that her exchange of stock for voting trust certificates on March 16, 1973, constitutes a sale. *After careful consideration of both positions, we have determined that plaintiff is not a seller under the Act or the Rule by virtue of having deposited her shares into a voting trust.*

In *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), cert. den., 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the

court held that only actual purchasers and sellers had standing to bring a suit under Section 10(b) and Rule 10b–5. Although this holding was substantially eroded by a myriad of subsequent cases creating exceptions to its application, the doctrine was recently revitalized by the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, *reh. den.*, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975). In that case the Court held that nonparties to an antitrust consent decree lacked the requisite standing under the 1934 Act to enforce the terms of the decree against corporate officers who allegedly breached their fiduciary duties. In reaching its decision, the Court stated:

> Were we to agree with the Court of Appeals in this case, we would leave the *Birnbaum* rule open to endless case-by-case erosion depending on whether a particular group of plaintiffs were thought by the court in which the issue was being litigated to be sufficiently more discrete than the world of potential purchasers at large to justify an exception. We do not believe that such a shifting and highly fact-oriented disposition of the issue of who may bring a damages claim for violation of Rule 10b–5 is a satisfactory basis for a rule of liability imposed on the conduct of business transactions. Nor is it as consistent as a straightforward application of the *Birnbaum* rule with the other factors which support the retention of that rule.[4]

■ Although *Birnbaum, supra*, and *Blue Chip, supra*, firmly establish the purchase or sale requirement, they do not purport to create an exclusive definition of these terms. Therefore, in resolving this matter, we will follow the two step analysis which courts employed prior to *Blue Chip*:[5]

---

4. 421 U.S. at 755, 95 S.Ct. at 1934.

5. Under this test and similar analyses, courts have fashioned the *forced seller doctrine* to confer standing on plaintiffs who were neither purchasers nor sellers when plaintiffs:

1) faced the dilemma of either selling their shares at a loss, or retaining them until they became worthless; *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 634 (2d Cir.), *cert. den.*, 389

U.S. 970, 88 S.Ct. 463, 19 L.Ed. 460 (1967); 2) were entitled only to cash in exchange for surrendering their shares pursuant to an adopted merger plan; *Bryan v. Brock & Blevins Co.*, 343 F.Supp. 1062, 1067 (N.D.Ga.1972), *aff'd*, 490 F.2d 563 (5th Cir.), *cert. den.*, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974); or 3) were induced to sell in the near future under threat of an antitrust suit. *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 797 (2d Cir.

1) *A focus upon the economic reality of the transaction, see, e.g., United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 848, 95 S.Ct. 2051, 44 L.Ed.2d 621, *reh. den.,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975); and

2) *A further economic determination as to whether in reality the transaction constitutes a ".  .  .  transformation of a securityholder's investment from an interest in a going enterprise into a right solely to receive payment in exchange for such interest." Murphey v. Hillwood Villa Assoc.,* 411 F.Supp. 287, 292 (S.D.N.Y.1976). (Emphasis added.) Applying this test, we find that in the instant case, plaintiff is not a seller under the provisions of the 1934 Act because she allegedly executed the voting trust agreement of March 16, 1973.

*Under the voting trust agreement, plaintiff retained the following economic rights normally associated with stock ownership:*

1) The right to prompt receipt of any dividends upon their issuance to the voting trustee;

2) The right to subscribe to any class of stock or securities offered to shareholders; and

3) The right to receive a pro rata distribution of corporate assets in the event of liquidation.

*Thus, the economic realities of the situation establish that plaintiff retained every right normally held by a shareholder with the exception of the right to vote, one which was only temporarily suspended. Therefore, it is clear that plaintiff's interest was not terminated or transformed in any real sense and, as such, her case is distinguishable from the forced seller cases. (See note 5, supra.)*

It should be noted that defendant McCloskey & Company, Inc. is a family owned closed corporation. Thus, the creation of a voting trust was a practical method of vesting authority to make everyday management decisions in one person who presumably was best equipped to operate the business profitably. Viewed in this context, the creation of a voting trust does not in any way resemble a purchase or sale. To the contrary, the voting trust agreement reflects an *internal management decision* to provide plaintiff with a continuing interest in a corporation run temporarily by her husband, defendant Thomas McCloskey. As such, it is not the type of transaction for which Congress intended to fashion a remedy under the provisions of this statute. As the Supreme Court stated in *Supt. of Insurance v. Bankers Life and Casualty Co.:*

> We agree that Congress by § 10(b) did not seek to regulate transactions which constitute no more than *internal corporate mismanagement.* (Emphasis added.)[6]

Therefore, we conclude that the creation of a voting trust in the present case does not constitute a purchase or sale under the 1934 Act.

█ In reaching our decision, we have carefully considered *Corporation Trust Co. v. Logan,* 52 F.Supp. 999 (D.Del.1943), and *Kinsey v. Knapp,* 154 F.Supp. 263 (E.D. Mich., S.D.), *rev'd on other grounds,* 249 F.2d 797 (6th Cir. 1957), *cert. den.,* 356 U.S. 936, 78 S.Ct. 778, 2 L.Ed.2d 812 (1958), which plaintiff cited for the proposition that the creation of a voting trust gives rise to a cause of action under the 1934 Act and Rule 10b–5. *However, these cases only hold that the registration requirements of the Securities Act of 1933, 15 U.S.C. § 77e, apply to solicitations to participate in a voting trust.* Thus, they represent judicial interpretation of an Act designed to facilitate regulation of the issuance of securities to the *public.* Indeed, it specifically ex-

---

1969), *cert. den.,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).
This doctrine has been expanded to embrace merger situations in which the stockholders of the acquired corporation are issued new shares in the surviving corporation. *Travis v. Anthes Imperial Ltd.,* 473 F.2d 515 (8th Cir. 1973); *cf.,*

*SEC v. National Securities, Inc.,* 393 U.S. 453 (1969). *But see, In re Penn Central Securities Litigation,* 494 F.2d 528 (3d Cir. 1974).

**6.** 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). *See also, In re Penn Central Securities Litigation, supra,* at 534.

empts "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). Therefore, the 1933 Act was not intended to govern securities transactions arising in the non-public setting of a closed corporation, as in the present case. Our decision that these cases are not controlling in light of the facts before us is supported by *Corporation Trust Co. v. Logan, supra*; there the court specifically stated that the voting trust agreement was not an agreement between individuals,[7] but rather an offer that ". . . palpably runs to thousands of persons."[8]

### B. RIGHT OF FIRST REFUSAL:

■ We agree with plaintiff's alternative argument that her standing to prosecute this Rule 10b–5 claim derives from the shareholder agreement of April 7, 1973, which granted McCloskey & Company, Inc. and its other shareholders options to purchase her stock in the event she decided to sell it.

Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10), defines "security" as including ". . . any . . . right to subscribe to or purchase, any [stock] . . . ." Furthermore, "sale" and "sell" are defined in Section 3(a)(14) of the Act, 15 U.S.C. § 78c(a)(14), as including ". . . any contract to sell or otherwise dispose of [stock]." *Thus, under the express terms of the Act the right of first refusal, under the facts and circumstances of the present case, is a statutory sale since it is a contract providing for the disposal of stock in a particular manner.*

Defendant vigorously argues that because the right of first refusal is purely executory and may never eventuate, it is not a sale for purposes of the 1934 Act. However, we find this reasoning to be totally unpersuasive in light of the language and purposes of the Act. The Act specifically states *any contract*—if Congress had intended to limit the provision to exclude executory contracts such as plaintiff's, it

could have simply defined the term as *any non-executory contract.* Just as easily Congress did not qualify the language; thus, we must interpret this to mean that Congress intended the remedial provisions of the 1934 Act to protect those who contractually grant rights of first refusal.

Further support for this conclusion is found in the *Blue Chip* case. Although the holding in that case is not dispositive of the issue presented here, in reaching its decision the Court did state that:

A contract to purchase or sell securities is expressly defined by § 3(a) of the 1934 Act, 15 U.S.C. § 78c(a), . . . as a purchase or sale of securities for the purposes of that Act. Unlike respondent, which had no contractual right or duty to purchase Blue Chip's securities, *the holders of puts, calls, options and other contractual rights or duties to purchase or sell securities have been recognized as "purchasers" or "sellers" of securities for purposes of Rule 10b–5,* not because of a judicial conclusion that they were similarly situated to "purchasers" or "sellers," *but because the definitional provisions of the 1934 Act themselves grant them such a status.* (Emphasis added.)[9]

Our conclusion that plaintiff is a statutory seller is not altered by the fact that defendant McCloskey, rather than plaintiff, actually signed the shareholder agreement which created the right of first refusal. Plaintiff was the beneficial owner of the stock and, therefore, her standing is not defeated by the mere fact that she did not personally sign the agreement. *See, Heyman v. Heyman,* 356 F.Supp. 958 (S.D.N.Y. 1973).

### C. CAUSAL CONNECTION BE-TWEEN FRAUD AND CONTRACT TO SELL:

Defendant argues that even if plaintiff is a statutory seller by virtue of the right of first refusal, her complaint should be dismissed because the requirement that the

---

7.  52 F.Supp. at 1001.

8.  *Id.* at 1002.

9.  421 U.S. at 750–51, 95 S.Ct. at 1932.

alleged fraud occurred "in connection with the sale of the security" has not been satisfied. It is true that approximately three weeks separate the purported execution of the voting trust agreement, which plaintiff claims was fraudulent, and the execution of the shareholder agreement, which gives plaintiff standing to maintain this action. However, plaintiff alleges in her amended complaint that at least one year prior to the alleged signing of the voting trust agreement defendant planned to terminate the existing marital relationship with her. She further alleges that the creation of the March 16, 1973, voting trust and the April 7, 1973, shareholder agreement were part of a continuing fraudulent scheme to drain the assets of McCloskey & Company, Inc., for the purpose of depriving her of the financial resources necessary to contest the divorce, or to make a favorable divorce settlement.

It is well settled that in ruling on a motion for summary judgment, or a motion to dismiss, all inferences pertinent to material facts which flow from the materials submitted must be decided in favor of the party opposing the motion. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Furthermore, as the Supreme Court stated in *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, *reh. denied*, 332 U.S. 766, 64 S.Ct. 941, 88 L.Ed. 1593 (1944), ". . . the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." [10] Therefore, in view of plaintiff's factual allegations, we are not prepared to rule as a matter of law on the record before us that a causal link is lacking between the alleged fraud and plaintiff's "sale" of securities; this is a question of fact for the jury to decide unless an augmented record based on further discovery would justify a renewal of the motion for summary judgment.

An appropriate order will issue denying defendants' motion to dismiss, or in the alternative, for summary judgment.

10. 321 U.S. at 627, 64 S.Ct. at 729.