**Prescott H. RATHBORNE**

v.

**J. Cornelius RATHBORNE et al.**

**Civ. A. No. 79–4763.**

United States District Court, E. D. Louisiana.

Dec. 2, 1980.

**516**

Louis R. Koerner, Jr., New Orleans, La., for plaintiffs.

Jack M. Weiss, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for J. Cornelius Rathborne, Mrs. Kathleen R. Wilmerding, Henry T. Fair, Jr., Edward P. Roberts, Jr., Michael C. Stanley, William A. White, III, Henry Wilmerding, Jr., Milton Hellmers, Robert E. Becker, Rathborne Land Co., Inc. & Rathborne Properties, Inc. & John G. Weinmann.

R. King Milling, M. Truman Woodward, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for Rathborne Land Co., Inc. & Rathborne Properties, Inc.

ARCENEAUX, District Judge.

This matter, involving a dispute among shareholders of closely-held family corporations, came before the Court on defendants' Motion to Dismiss or, Alternatively, Motion to Strike.

The Court, after hearing oral argument based on memoranda supplied by opposing counsel, granted defendants' Motion to Dismiss for the reasons set forth below.

### I. Background

By minute entry dated May 7, 1980, plaintiff's claims in this matter were limited to an individual claim under Section 10 of the Securities Exchange Act of 1934 (15 U.S.C. § 78j).[1] At the time of the earlier motions, it was held that plaintiff's derivative claims could not be maintained since it was determined that plaintiff did not adequately represent the corporation or other shareholders similarly situated as is re-

---

1. Section 10 of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) states:

    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

    \* \* \* \* \* \*

    (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

    \* \* \* \* \* \*

    Rule 10b–5—Employment of Manipulative and Deceptive Devices

    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

    (a) To employ any device, scheme, or artifice to defraud,

    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

quired of one seeking to enforce a corporate wrong.[2]

■ The right to bring the Section 10(b) claim was left open since that claim is personal in nature and does not depend on a corporate wrong. Plaintiff was given leave to amend his complaint to adequately present the Section 10(b) cause of action, and it is that amendment that was the focal point of defendants' Motion to Dismiss.

## II. The Issue

The issue raised in the Motion to Dismiss concerns the nature of two transactions and whether or not plaintiff can be said to have participated in a purchase or sale as required by Section 10(b).

## III. Plaintiff Did Not Participate in a Purchase or Sale.

The two transactions include, first, a conveyance of assets by Rathborne Land Company ("RLC") to Rathborne Properties, Inc. ("RPI") and a reciprocal issuance of stock by RPI to RLC; and, secondly, a pro-rata dividend distribution of the RPI stock to shareholders of RLC. The first step was admittedly a purchase-sale transaction as contemplated by the Act but plaintiff was not a party to that transaction. The second step, the spin-off of RPI stock to shareholders of RLC via a dividend, is the transaction that would have to fit within the definition of sale contained in Section 2 of the 1933 Act, 15 U.S.C. § 77b in order to give plaintiff a maintainable cause of action. As pertinent here, that definition is as follows:

> When used in this subchapter, unless the context otherwise requires—
>
> \* \* \* \* \* \*
>
> (3) The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value. The term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value . . . .

■ As the term "sale" includes a "disposition of a security", the dissemination of the RPI stock among RLC shareholders was a sale. Defendants as much as concede this characterization. However, defendants argue that this disposition was not a statutory sale because it was not "for value", as mandated by the definition.

We agree, believing that the "distribution" amounted to merely RLC "parcelling out" a dividend to shareholders.

■ In seeking to effectuate the purpose of Section 10(b), this Court recognizes that it "must be read flexibly, not technically and restrictively", *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1978).

However, a line of cases holding that such subsidiary spin-off may constitute "sales" and, as such, fit the purpose of Section 10(b), rested on facts wholly inapposite to those present in the instant claim and cannot be deemed controlling.

In the cases comprising that line of jurisprudence, it was found that the parent corporation had received "value" or consideration for the disposition of its subsidiary through the creation of a public market in the subsidiary's shares, an "aftermarket" which substantially increased the value of the spin-off-subsidiary's shares retained by the parent corporation or by the insiders in control of the parent. *See, e. g., S.E.C. v. Datronics Engineers, Inc.*, 490 F.2d 250 (4th Cir. 1973); *S.E.C. v. Harwyn Industries Corp.*, 326 F.Supp. 943 (S.D.N.Y.1971). In contrast, the thrust of plaintiff's complaint is that the initial transaction between RLC and RPI was fraudulently procured without any real business purpose. Plaintiff complains of certain bonuses realized by the officers of the corporation. But that claim, based upon corporate mismanagement, is derivative in nature and, as previously held, plaintiff does not have the requisite standing to exert that claim. Further, if plaintiff asserts that enhancement came to RLC from the transaction, then his complaint

**2.** See Appendix.

would literally be asking for redress on the basis of a transaction that did not produce a higher return. This Court does not agree that such can be the touchstone of a Section 10(b) action.

Perhaps most distinguishable in the instant action is the nature of the corporations involved. These closely-held family corporations will generally not produce a public market as found in the *Datronics* line of cases. The value constructed by the Court in *Datronics, supra,* does not exist in this situation. It is the Court's view that we are faced with a recalcitrant family shareholder in a closely-held corporation who has different ideas as to how the corporation should be run.

We also take note of *International Controls Corp. v. Vesco,* 490 F.2d 1334 (2d Cir. 1974), which found a statutory sale in a spin-off situation despite its inability to find consideration or value in the transaction. The Second Circuit determined that Vesco's fraudulent activities that began the chain of events caused the corporate directors of this publicly-traded corporation to spin off assets and then distribute those assets through a stock dividend of the newly-formed subsidiary. The fraud that was predetermined in the *Vesco* situation is lacking in the instant case.

Without the prior-established fraud found in the *Vesco* case, we are unable to conclude that the dividend at issue herein is of the type contemplated by Section 10(b) under the *Vesco* rule. The transaction contained in this suit is not the kind for "which the corporation is well deserving of and entitled to the protection of Section 10(b)." In fact, the corporation, RLC, has stated that it supports the transaction at issue. Therefore, absent a finding of consideration, or some pecuniary or similar benefit derived by the parent corporation, RLC, we must hold that the "spin-off" to RLC shareholders of RPI stock is not a distribution for value as contemplated by Section 10(b) and Rule 10b–5.

The plaintiff's remaining claim will therefore be dismissed.

## APPENDIX

Arceneaux, J.

May 7, 1980

This matter, involving a dispute among shareholders of closely-held family corporations, came before the Court on plaintiff's motion to strike and defendants' motion for summary judgment.

The Court, after hearing oral arguments, took these matters under submission. After careful consideration of the memoranda and arguments of counsel, IT IS ORDERED that:

1. Plaintiff's Motion to Strike is DENIED;

2. Defendants' Motion for Summary Judgment is GRANTED, insofar as it concerns the ability of plaintiff to maintain a derivative claim on behalf of the corporation;

3. Plaintiff has no claim cognizable under Section 14(a) of the Securities Exchange Act of 1934, 48 Stat. 895, 15 U.S.C. § 78n(a); and,

4. Plaintiff's individual claim under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) will not be dismissed.

### I.

The Court finds that the affidavits submitted fulfill the requirements of the Federal Rules of Civil Procedure, Rule 56(e). These affidavits state that each affiant is familiar with the transactions involved in plaintiff's complaint; that each affiant voted for the transactions out of which the suit arises, and that each affiant continues to favor those transactions.

Rule 56(e) requires that an affidavit be based on personal knowledge and shall set forth such facts as would be admissible in evidence.

The Court finds that these affidavits meet those requirements.

### II.

A minority stockholder seeking to bring a derivative action need not have the support

of all minority stockholders, but when the individual plaintiff claims an ownership interest (legal and/or beneficial) aggregating only twelve and one-half percent (12½%) of the outstanding shares brings a derivative action on behalf of the corporation, and the individual defendants, either in their legal or beneficial capacities, own among them eighty-seven and one-half percent (87½%) of the outstanding shares; have submitted affidavits indicating that the plaintiff does not represent their views; that they believe the suit is not in the best interests of the corporation, and that they still favor and support the contested action, then plaintiff, in this particular context, does not represent other shareholders similarly situated. It is the Court's finding that, here, plaintiff in effect only represents his own interests and therefore cannot maintain a derivative action. *See Kuzmicky [Kuzmickey] v. Dunmore Corp.* (E.D.Pa.1976), 420 F.Supp. 226; *Peterson [Petersen] v. Federated Development Co.* (S.D.N.Y.1976), 416 F.Supp. 466. Accordingly, the Court finds that plaintiff has not shown that he can adequately represent the corporation.

Defendants' Motion for Summary Judgment is GRANTED, and the derivative action is dismissed.

### III.

Plaintiff's Section 14(a) claim is not appropriate in this proceeding. Section 14(a), codified at 15 U.S.C. § 78n(a) is only applicable "... in respect of any security ... registered pursuant to Section 78*l* of this title."

As plaintiff points out in his complaint, the stock of the closely held family corporation is not, nor has it ever been, registered pursuant to the Act.

Of course, if the stock were required to be so registered there could be no escape from the proxy requirements of Section 14(a) merely because the corporation had failed to effect registration. *See Reserve Life Insurance Company, et al. v. Provident Life Insurance Company, et al.*, 499 F.2d 715 (8th Cir. 1974).

However, in this instance, this Court specifically finds that the stock of the closely held corporation and/or its "spin-off" affiliate were not subject to registration.

As the record demonstrates, the stock of the company is held of record by fewer than five hundred persons, and is therefore exempt from the registration requirements of the Act. 15 U.S.C. 78*l*(g)(1). *See, also, Bastian v. Lakefront Realty Corporation, et al.*, 581 F.2d 685 (7th Cir. 1978).

As noted in *Bastian, supra*: "the fact remains that Congress drew a line ... under which firms with less than 500 shareholders need never register, report or comply with the proxy rules, ..." 581 F.2d at 689.

Accordingly, the Court finds that plaintiff has no Section 14(a) remedy in this proceeding.

### IV.

The last remaining issue concerns plaintiff's claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b(5) of the Securities and Exchange Commission promulgated pursuant thereto. This claim, if it exists, is personal in nature, does not depend on a corporate wrong, and is not conditioned on the security purchased or sold being registered.

The Court finds that factual issues remain outstanding relative to the spin-off and whether or not it should be characterized as a sale. Further, the issue of damages being disputed, and not adequately addressed, by the motions brought before the Court to date, renders a summary judgment on that issue inappropriate at this time. Accordingly, plaintiff's 10b(5) claim will not be dismissed.