**Prescott H. RATHBORNE,
Plaintiff-Appellant,**

v.

**J. Cornelius RATHBORNE, et al.,
Defendants-Appellees.**

No. 81–3070.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1982.

Rehearing Denied Oct. 7, 1982.

---

John F. Robbert, New Orleans, La., for plaintiff-appellant.

Jack M. Weiss, New Orleans, La., Kenneth R. Wynne, Houston, Tex., for defendants-appellees.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiff-appellant, a minority shareholder in two closely-held corporations, brought this federal securities fraud action in an effort to challenge a corporate reorganization. The district court dismissed his complaint, finding that because the plaintiff was neither a "purchaser" nor a "seller" of securities, he did not have standing to assert a 10b–5 claim. We agree and therefore affirm the dismissal entered below.

## I. FACTS AND PROCEDURAL HISTORY:

Plaintiff-appellant Prescott T. Rathborne holds a one-eighth interest in two closely-held corporations; the Rathborne Land Company ("RLC") and Rathborne Properties Inc. ("RPI"). As the names imply, these are family real estate businesses.

Of the two corporations, only RLC existed prior to 1978. At that time, RLC's assets consisted of developed and undeveloped parcels of Louisiana real estate. In 1978, a majority of RLC's shareholders resolved to separate the corporation's developed and undeveloped properties and to place these differing assets in two distinct corporate entities.[1] To this end, it was planned that

---

1. The appellees contend that there was a valid business purpose for this reorganization. They explain that RLC had planned to borrow sub-

while RLC would retain its undeveloped properties, a new corporation to be known as Rathborne Properties Inc., would hold the developed real estate.

The appellant vigorously opposed the proposed reorganization,[2] however the plan received the support of other shareowners who mustered a convincing 87½% majority.

Pursuant to a plan approved by the shareholders, a new corporation, RPI, was created.[3] RLC transferred all of its developed income-producing assets to the newborn RPI. RPI in turn issued all of its stock to its progenitor, RLC. Immediately after the RLC-RPI stock-for-assets exchange, RLC transferred its holdings of newly-issued RPI stock to its (RLC's) own shareholders in a *pro rata* distribution.

The impact of these transactions upon the plaintiff can be simply stated. Prior to the 1978 reorganization, Prescott Rathborne held a one-eighth interest in RLC. When the transactional dust had settled, he found himself with a one-eighth interest in RLC and a one-eighth interest in the new-born RPI.

While the appellant continued to hold the same proportionate share of stocks representing participation in the same assets he had always held, he maintained that the reorganization had been a grievous mis-

take. In an effort to rescind the transaction he had so bitterly opposed, Rathborne brought two related federal securities fraud actions. One claim was filed as a shareholder derivative suit on behalf of RLC; the other was brought as a direct action, naming RLC, RPI, its officers, and majority shareholders as defendants. The plaintiff styled both the direct and derivative actions as securities fraud claims brought pursuant to § 10(b)[4] of the Securities Exchange Act of 1934 and Rule 10b–5.[5]

In setting forth his claims, Rathborne contended that the various costs incident to the reorganization were excessive. He also claimed that if the transaction had been delayed for several years, certain costs could have been avoided.[6] Finally, Rathborne alleged that management's failure to give the shareholders this information constituted an omission of a "material fact."

The defendants moved to dismiss the derivative claims, arguing that insofar as the vast majority of RLC's shareholders opposed Rathborne's efforts "on behalf" of the corporation, his derivative suit could not be maintained. The district court agreed and the derivative claims were dismissed.[7]

Although his derivative claims were stricken, Rathborne was allowed to press

---

stantial sums in order to finance projects on its undeveloped properties. Not wanting to put their income-producing properties at risk, RLC's owners and management decided to place these valuable assets in a separate corporation beyond the reach of RLC's creditors.

**2.** Apparently Rathborne feared that he might not continue to receive regular dividend payments if the developed income-producing properties were transferred from RLC to RPI. Appellant tells us that RLC is a "personal holding company" and that federal tax regulations require that it must regularly disgorge its current income in the form of dividends to shareholders. In contrast, RPI is not a personal holding company and is *not* required to pay out current income. Therefore, Rathborne fears that RPI may retain the earnings generated by its developed properties rather than paying regular dividends to shareholders.

**3.** The newly-born RPI was an entity spawned and wholly controlled by its corporate parent, RLC.

**4.** 15 U.S.C. § 78(j)(b).

**5.** 17 C.F.R. § 240.10b–5.

**6.** RLC's management employment contracts provided that if the corporation should ever divest itself of its developed assets, the company would pay certain corporate officers a substantial lump-sum bonus. The transfer of RLC's assets to RPI triggered this bonus provision. Thus, when RLC transferred its developed properties to RPI, substantial bonuses were paid to management.

One of the managers who received a bonus was nearing retirement. The appellant contends that if the transaction had been delayed until after this senior manager had actually retired, the payment of this bonus would have been unnecessary.

**7.** Rathborne does not appeal from the dismissal of his derivative claims.

his *direct* 10b–5 cause of action. In response to this direct claim, the defendants offered another motion to dismiss, arguing that because the plaintiff was neither a purchaser nor seller of securities, he did not have standing to assert a 10b–5 claim.

■ In answer to these arguments, Rathborne contended that the RPI-RLC stock-for-assets exchange constituted a "purchase" or "sale" within the meaning of § 10(b) of the Securities Exchange Act of 1934. In the alternative, Rathborne argued that RLC's *pro rata* distribution of the newly-issued RPI shares to its (RLC's) own shareholders was itself a "purchase" or "sale" transaction.[8]

■ After oral argument and consideration of the parties' briefs and memoranda, the district court held that the plaintiff was neither a purchaser nor seller of securities and therefore did not have standing to assert a 10b–5 claim. *Rathborne v. Rathborne*, 508 F.Supp. 515 (E.D.La.1980). Accordingly, the plaintiff's direct 10b–5 action was dismissed.[9] Rathborne then brought this appeal.[10]

8. In his arguments before the district court, the plaintiff did not specifically address the question of whether he could be considered a "purchaser" of securities. However, the plaintiff's failure to make these arguments is not fatal to his appeal. To survive a 12(b)6 motion to dismiss, a complaint need not correctly categorize the legal theories giving rise to the claims; it must merely allege facts upon which relief can be granted. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981).

9. Rathborne's complaint was dismissed upon the defendants' Rule 12(b)6 motion to dismiss for failure to state a claim. Rule 12(b)6 F.R. Civ.P.

10. The appellees have suggested that this appeal must be dismissed because the appellant failed to file a notice of appeal within the time limits imposed by Rule 4(a) of the Federal Rules of Appellate Procedure. We find this argument to be without merit.

On December 2, 1980, the district court entered a judgment dismissing the plaintiff's claim. The plaintiff then filed a timely new trial motion pursuant to F.R.Civ.P. 59(e). This matter was not taken up by the district court until January 21, 1981, when the new trial motion was denied. The plaintiff then filed a notice of appeal on February 9, 1981. We find

## II. PURCHASES AND SALES, PURCHASERS AND SELLERS:

In this appeal, we are concerned with two distinct elements of the 10b–5 cause of action: the "purchase or sale" requirement and the "purchaser-seller" standing rule.

### A. *Purchases and Sales*

■ In order to set forth a valid 10b–5 cause of action, a plaintiff must allege that there has been wrongdoing *in connection with the purchase or sale of a security.*[11] *Brown v. Ivie*, 661 F.2d 62, 65 (5th Cir. 1981); *Alley v. Miramon*, 614 F.2d 1372, 1380 (5th Cir. 1980); *Herpich v. Wallace*, 430 F.2d 792, 805–806 (5th Cir. 1970).

"Section 10(b) and Rule 10b–5 do not proscribe all fraudulent schemes concocted to take undue advantage of investors, but only those fraudulent schemes that are employed in connection with the purchase or sale of any security."

*Herpich v. Wallace, supra* at 805–806. Thus, a valid 10b–5 complaint must allege facts which could support a finding that

that the February 9 notice of appeal, coming nineteen days after the district court's final disposition of the case, certainly comports with the filing requirements of F.R.A.P. 4(a).

11. § 10(b) of the Securities Exchange Act of 1934 makes it

"unlawful for any person ... [t]o use or employ, *in connection with the purchase or sale of any security* ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate ..." (emphasis added).

Pursuant to the authority vested in it by Congress, the S.E.C. promulgated Rule 10b–5, which provides that it

"shall be unlawful ... for any person ... (a) to employ any device, scheme or artifice to defraud ... (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, not misleading, or (c) to engage in any act, practice, or course of business which ... would operate as a fraud or deceit upon any person ... *in connection with the purchase or sale of any security,*" (emphasis added).

any alleged wrongdoing has been in connection with the purchase or sale of securities.

### B. *Purchasers and Sellers*

In order to bring a private damage action under Rule 10b–5 [12] a plaintiff must allege that he himself was an actual purchaser or seller of securities. [13] *Blue Chip Stamp v. Manor Drug Stores*, 421 U.S. 723 (1975). Thus, even if it can be established that there has been wrongdoing "in connection with the purchase or sale of a security," a private party does not have standing to recover under Rule 10b–5 unless the plaintiff can allege and ultimately establish that he himself was a purchaser or seller.

### C. *Appellant's Theories*

Plaintiff-appellant Rathborne has advanced two theories in support of his contention that the transactions here in question entailed a "purchase" or "sale" of securities and that he himself was a "purchaser" who has standing to assert a 10b–5 claim. First; Rathborne argues that the RLC-RPI asset-for-stock exchange constituted a purchase or sale of securities and that as a recipient of the newly issued RPI stock, he was "a purchaser" with standing to assert a 10b–5 claim. Second; Rathborne contends that the *pro rata* distribution of RPI stock to RLC shareholders was itself a sale of securities and that as a recipient of these securities, he was a purchaser.

**12.** Section 10(b) of the 1934 Act does not provide an express civil remedy for its violation. However, in 1946 it was held that a private right of action under Rule 10b–5 could be implied. *Kardon v. National Gypsum Co.*, 69 F.Supp. 512 (E.D.Pa.1946). This rule was soon adopted by an overwhelming consensus of the Courts of Appeals and ultimately by the Supreme Court. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 729–730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 150–154, 92 S.Ct. 1456, 1470–1472, 31 L.Ed.2d 741; *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n.9, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971).

**13.** In a landmark opinion authored by Judge Augustus Hand, the Second Circuit held that only actual purchasers and sellers of securities would have standing to assert civil damage

■ Thus, we are asked to decide whether the transactions challenged by the appellant involved a purchase or sale of securities and whether the appellant himself can be considered a purchaser with standing to assert a 10b–5 claim. In treating these issues, we will assume all of the plaintiff's factual allegations to be true and then decide whether these facts can be construed as giving rise to a valid 10b–5 cause of action. [14]

### III. THE RLC–RPI STOCK–FOR–ASSETS EXCHANGE:

Appellant Rathborne has argued that the RLC–RPI stock-for-assets exchange constituted a statutory sale of securities for the purposes of Section 10(b) and that as an ultimate recipient of RPI stock, he has standing to assert a 10b–5 claim challenging the transaction. We do not agree.

■ An arms-length stock-for-assets trade between two distinct and independent corporations will constitute a purchase or sale of securities for the purposes of § 10(b). *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1330 (7th Cir. 1969). However, a transfer of securities from a wholly controlled subsidiary to its parent or between two corporations wholly controlled by a third does *not* amount to a statutory purchase or sale. *See e.g., International Controls Corporation v. Vesco*, 490 F.2d 1334, 1343 (2nd Cir. 1974) ("[S]elf-deal-

claims under Rule 10b–5. *Birnbaum v. Newport Steel Corporation*, 193 F.2d 461 (2nd Cir. 1952). Hand's holding was embraced by the Supreme Court in *Blue Chip Stamps, supra.*

**14.** The plaintiff's complaint was dismissed upon the defendants' motion to dismiss for failure to state a claim. In ruling upon such a motion, a district court must assume all of the plaintiff's factual allegations to be true and then decide whether the facts alleged could give rise to an actionable 10b–5 claim. *Joyce v. Joyce Beverage, Inc.*, 571 F.2d 703, 707 (2nd Cir. 1978); *Iroquois Industries Inc. v. Syracuse China Corp.*, 417 F.2d 963, 965 (2nd Cir. 1969). Thus, in determining whether the district court erred in dismissing the plaintiff's 10b–5 action, we will take all of the plaintiff's factual allegations to be true. *Brown v. Ivie*, 661 F.2d 62, 66 (5th Cir. 1981).

ing transaction [between corporation and wholly controlled subsidiary] does not . . . satisfy the 'purchase or sale' requirement of § 10(b) and Rule 10b–5"); *In Re Penn Central Securities Litigation*, 347 F.Supp. 1324, 1336–1339 (E.D.Pa.1972), *aff'd*, 494 F.2d 528, 532–539 (3rd Cir. 1974)[15]; *cf. Blau v. Mission Corp.*, 212 F.2d 77, 80 (2nd Cir. 1954) (exchange of shares between parent corporation and wholly controlled subsidiary is not a statutory purchase or sale, but is "a mere transfer between corporate pockets").

■ In this case, all parties agree that the new-born RPI was an entity spawned and wholly controlled by its corporate parent, RLC. The stock-for-assets "trade" between RLC and RPI can hardly be characterized as the kind of arms-length transaction which would constitute a statutory purchase or sale. Rather, it was a mere "transfer between corporate pockets." We therefore conclude the RLC–RPI stock-for-assets exchange did not amount to a purchase or sale transaction for the purposes of § 10(b) or Rule 10b–5.

Moreover, even if we were to assume that the RLC–RPI stock-for-assets "trade" did constitute a statutory purchase or sale, we find that this plaintiff lacks standing to challenge the transaction. There were only two parties to the RLC–RPI stock-for-assets trade: RLC and RPI. Even if the stock-for-assets trade did constitute a purchase or sale, only RLC or RPI would have standing as actual purchasers or sellers to bring a 10b–5 action. This shareholder-plaintiff does not. *Blue Chip Stamps v. Manor Drug Stores, supra* at 738.[16]

Thus, we reject the appellant's contention that the RLC–RPI stock-for-assets exchange can serve as the basis for his 10b–5 action. This stock-for-assets trade did not constitute a statutory purchase or sale of securities. Moreover, even if the trade had involved a sale, this plaintiff was not a party to the transaction and therefore was not an actual purchaser or seller of securities.

## IV. THE PRO–RATA DISTRIBUTION OF RPI STOCK TO RLC SHAREHOLDERS: WAS RATHBORNE A PURCHASER?

Appellant argues that RLC's *pro rata* distribution of RPI stock to RLC shareholders was itself a sale of securities and that as a recipient of that stock, the plaintiff was a "purchaser." The district court rejected these contentions and held that plaintiff was not a statutory purchaser with standing to assert a 10b–5 claim. We agree.[17]

---

**15.** The *Penn Central* litigation concerned a reorganization similar to the plan challenged in the instant case. In *Penn Central*, a corporation owning railroad and non-railroad assets resolved to separate its holdings and to place them in different corporations. To this end, the original corporation created two new wholly controlled corporations which then held the railroad and non-railroad assets. This entailed a complex series of stock-for-assets trades among the wholly controlled corporate spawn of the original railroad.

Certain shareholders brought 10b–5 suits challenging the reorganization. The district court dismissed the actions, holding, *inter alia*, that the shifting of assets and securities among the wholly controlled corporations did not constitute purchases or sales for the purposes of § 10(b). *Penn Central*, 347 F.Supp. 1327, 1336–39 (E.D.Pa.1972). This analysis was embraced by the Third Circuit. *Penn Central*, 494 F.2d 528, 532–539 (3rd Cir. 1974).

**16.** In *Blue Chip Stamps, supra*, the Supreme Court explicitly stated that where a corporation has been defrauded in a securities transaction, a shareholder does not have standing to bring a *direct* action under Rule 10b–5. This rule applies even where the shareholder has suffered a substantial loss in the value of his investment as the result of the fraud perpetrated upon his corporation. *Id.* at 738. If a corporation has purchased or sold securities in a transaction tainted by fraud, the corporation may have a 10b–5 cause of action. However, the corporation's shareholders do not have standing to directly assert a claim which "belongs to" the corporation.

**17.** The district court held that because no value had been paid or received for the RPI securities, the distribution of these securities would not constitute a statutory purchase or sale. *Rathborne v. Rathborne*, 508 F.Supp. 515 (E.D. La.1980). While we agree with the result reached by the district court, we do not embrace an analysis which focuses upon the presence or absence of consideration as being dispositive of the "purchase or sale" issue.

■ The distribution of RPI securities to RLC shareholders was not a "garden variety" purchase or sale transaction. The recipients did not pay for the securities, nor did the distributing corporation "sell" them in the ordinary sense of the word. However, the fact that no "value" was paid is not necessarily dispositive.[18] This court has consistently held that a statutory purchase or sale for the purposes of Rule 10b–5 may in some cases encompass transactions that bear little resemblance to conventional common law purchases and sales. *Junker v. Crory*, 650 F.2d 1349, 1359 n.15 (5th Cir. 1981); *Alley v. Miramon*, 614 F.2d 1372, 1380 (5th Cir. 1980); *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 590 (5th Cir. 1974). In determining whether a party to a securities transaction is a "purchaser" or "seller," we must ask whether the transaction has wrought a fundamental change in the nature of the plaintiff's investment. *Watts v. Des Moines Register and Tribune*, 525 F.Supp. 1311, 1318 (S.D.Ia.1981); *McCloskey v. McCloskey*, 450 F.Supp. 991, 995 (E.D.Pa.1978). The crucial question is not whether the transaction fulfills the requisites of a common law sale; the core issue is whether the transaction has transformed the plaintiff into the functional equivalent of a purchaser or seller—has the plaintiff been forced to exchange his stock for shares representing a participation in a substantially different enterprise?[19] We must focus upon the "economic reality" of the

transaction, *United Housing Foundation v. Forman*, 421 U.S. 837, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975); *Watts v. Des Moines Register and Tribune, supra; McCloskey v. McCloskey, supra*; and determine whether the transaction has "transformed" the plaintiff's interests "in any real sense." *McCloskey, supra* at 995.[20]

■ Applying this "economic reality" test to the facts of the instant case, we find that the plaintiff was not subjected to the kind of fundamental change in the nature of his investment which is necessary to constitute a statutory purchase or sale. Prior to RLC's distribution of RPI shares, RLC held all of RPI's outstanding stock. At that point, Rathborne's one-eighth interest in RLC represented a participation in both RLC and RPI. After the distribution, Rathborne continued to hold stock representing a one-eighth interest in RLC and RPI. Thus, he continued to possess the same proportionate interests in the same enterprises, with the same assets, and the same prospects. His voting rights did not change, nor did his degree of control.

In sum, the plaintiff has failed to allege any facts which could support a finding that the nature of his investment substantively changed as a result of the *pro rata* distribution of RPI stock. Accordingly, we reject his contention that he experienced a "purchase" as a consequence of this transaction.[21]

18. *International Controls v. Vesco, supra* at 1346 (payment of consideration not a necessary element of statutory purchase or sale under Rule 10b–5).

19. *Compare, S.E.C. v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (shareholders "purchased" shares where forced to exchange stock for shares in new and different corporation pursuant to merger); *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 591 (5th Cir. 1974) (shareholders of acquired corporation "purchased" shares of new and different acquiring corporation pursuant to merger); *with, In Re Penn Central Securities Litigation*, 494 F.2d 528 (3rd Cir. 1974) (reorganization did not entail purchase or sale since shareholders did not receive stock in "a substantially different company with substantially different prospects").

20. "In determining the reach of the terms 'purchase or sale' within the meaning of § 10b and Rule 10b–5 . . . the court should look to the substance of the transactions . . . any transaction which partakes of the character of a sale in its impact or the interests of . . . shareholders . . . [is] within the proscription of the statute." 4 A.L.R.Fed. 1048, 1055–56.

21. The appellant has cited no authority which persuades us that he is a purchaser with standing to assert a 10b–5 cause of action. While Rathborne suggests that the Second Circuit's opinion in *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2nd Cir. 1974) and the Fourth Circuit's decision in *S.E.C. v. Datronics Engineers, Inc.*, 490 F.2d 250 (4th Cir. 1973) support his position, we find these cases to be inapposite.

In *International Controls v. Vesco, supra*, the Second Circuit held that when a corporation

## V. CONCLUSION

Appellant Rathborne is obviously upset about the 1978 RLC-RPI reorganization. He vigorously fought this instance of corporate meiosis and now seeks to use the federal securities laws in his efforts to undo that which he so bitterly opposed. However, the Securities Exchange Act is not a corporation code; the Act does not vest minority shareholders with the power to veto corporate decisions. Majoritarian autocracy, even when exercised in a maleficent manner, will not give rise to 10b–5 liability unless there has been wrongdoing in connection with the purchase or sale of a security. While majoritarian oppression may well be proscribed by virtue of the fiduciary duties imposed by state law, the federal 10b–5 remedy is only available to purchasers or sellers of securities.

Rathborne has suggested that in this case, the RLC–RPI stock-for-assets trade provides a basis for his 10b–5 claim. We reject this claim for two reasons: first, the so-called "trade" was a mere transfer between corporate pockets and was not the kind of arms-length transaction which would constitute a statutory purchase or sale; second, the plaintiff was not a party to this transaction and therefore lacks standing to challenge it.

Rathborne has also argued that RLC's *pro rata* distribution of RPI securities constituted a sale of stock and that as a recipient of the RPI shares, he was a statutory "purchaser." We reject this theory as well. The 10b–5 action is a statutory construct. We therefore look to the purposes and thrusts of the statute in order to determine whether its protective umbrella covers a given transaction. In undertaking this analysis, our definition of the statutory purchaser or seller is not to be confined within a semantic straitjacket. We recognize that a 10b–5 purchase or sale may in some cases encompass transactions that bear little resemblance to common law purchases or sales. Thus, where a securities transaction results in a fundamental change in the nature of a shareholder's investment, leaving the plaintiff with shares that represent a participation in wholly new and different enterprise, the plaintiff may be considered a purchaser or seller. However, in this case the plaintiff did not participate in a conventional purchase or sale of securities, nor did he experience the kind of fundamental change in the nature of his investment which would allow us to find that he was a constructive purchaser.

This plaintiff was not forced to trade apples for oranges; Rathborne's hoard was left substantively unchanged by the reorganization here in question. While he may have been left with new and different pieces of paper, the paper represented the same proportionate interest in the same assets and enterprises he had always held. In the final analysis, this transaction presents a classic example of the choice between "six of one and a half-dozen of the other." The reorganization left him neither richer nor poorer.

Having addressed each of the plaintiff-appellant's theories, we find that the district court was correct in concluding that he was not a statutory purchaser or seller. The judgment dismissing the plaintiff's claim is therefore

AFFIRMED.

---

distributed portfolio securities to its shareholders, the *distributing corporation* was acting as a statutory seller and therefore had standing to assert a 10b–5 claim. However, the *Vesco* court did *not* hold that the *shareholder recipients* of such a distribution had standing to assert direct 10b–5 claims. Similarly, in *S.E.C. v. Datronics, supra,* the Fourth Circuit held that a corporation's distribution of unregistered portfolio securities to its shareholders constituted a sale of stock in violation of the registration requirements of the Securities Act of 1933. However, *Datronics* was an enforcement action brought by the S.E.C. pursuant to the 1933 Act; it was not a 10b–5 private damage action and no standing question was presented. Thus, neither *Vesco, supra* nor *Datronics, supra* stand for the proposition that a *recipient* of a distribution of portfolio securities has standing as a statutory purchaser to assert private 10b–5 damage claims.